**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| DEMERRICK RATLIFF (PORTER), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SHELBY COUNTY, TENNESSEE, LEE ) <br> HARRIS, Individually and in his official ) <br> capacity, and FLOYD BONNER, JR., ) <br> Individually and in his official capacity, ) <br> ) <br> Defendants. ) | No. 2:20-cv-02012-TLP-atc <br><br> JURY DEMAND |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Demerrick Ratliff (Porter) sued Defendants Shelby County, Tennessee and Floyd Bonner under 42 U.S.C. § 1983. (ECF No. 1 at PageID 2.) Plaintiff then moved for partial summary judgment. (ECF No. 34.) Defendants not only oppose Plaintiff's motion but also filed a cross-motion for partial summary judgment of their own. (ECF No. 37.) Plaintiff responded in opposition to Defendants' cross-motion (ECF No. 41), and Defendants then replied. (ECF No. 42.)

For the reasons below, the Court finds that Defendants have shown that there is no genuine dispute of material fact about Defendant Bonner's individual liability. Otherwise, however, neither side is entitled to summary judgment because unresolved questions of material fact abound. The Court therefore **DENIES** Plaintiff's motion for partial summary judgment and

**GRANTS IN PART AND DENIES IN PART** Defendant's cross-motion for partial summary judgment.

## BACKGROUND

Plaintiff's motion for partial summary judgment includes a statement of undisputed facts. (ECF No. 34-1 at PageID 218–22.) Defendants argue that Plaintiff relies only on his Amended Complaint and Defendants' answer to support his statement of undisputed facts. (ECF No. 37-1 at PageID 256.) And often, where Plaintiff cites Defendants' answer for support, Defendants deny the allegations. (*Id.*) In fact, Defendants deny more than half of the listed facts Plaintiff calls "undisputed." (*See* ECF No. 37-2.)

Defendants filed their own statement of undisputed facts with their cross-motion for partial summary judgment. (*See* ECF No. 37-3.) The Court looks to both statements of undisputed facts for the description of the factual background here. But because the parties still dispute many of those facts, the section below is brief and lacks important details.[1]

### I. Undisputed Facts

These facts are undisputed. The Tennessee Board of Parole (the "Parole Board") released Plaintiff on parole in 2016. (ECF Nos. 37-3 at PageID 271; 41-1 at PageID 309.) Plaintiff agreed in writing to thirteen numbered terms as conditions of his parole. (*Id.*) For example, in Condition 2 Plaintiff agreed to "obey the laws of the United States or any state" and local

---

[1] One reason it is hard to recount the facts here is because the parties have attached documents without supporting witness declarations or evidence showing their authenticity or admissibility. Of course, Rule 56 requires more from the parties. Defendants correctly object to Plaintiff's lack of evidence but then attach similarly unsupported documents of their own. (*See* ECF No. 37-4.) But some of these documents are Court documents or they bear the signature of Plaintiff. Others refer to facts that are, in fact, undisputed. The Court will try to rely on those documents that are either undisputed or otherwise admissible.

ordinances where he lives. And in Condition Number 9 he agreed not to use or have illegal drugs and to undergo random drug testing. (*Id.*)

A few years later, in May 2019, a state grand jury issued an indictment in case number 19-03836 for Plaintiff's grown son whose name is also Demerrick Porter. (ECF Nos. 34-1 at PageID 219; 37-2 at PageID 267.) But somehow the authorities mistakenly connected Plaintiff's RNI number[2] with his son's new charges. (*Id.*) The parties agree[3] that someone made this mistake but the record lacks any evidence about how it happened or who made the mistake. (*Id.*)

Meanwhile, in July 2019, the Tennessee Department of Corrections issued a notice of sanctions to Plaintiff because he tested positive for marijuana. (ECF No 41-2 at PageID 312.)

The parties agree that, on August 23, 2019, law enforcement officers arrested Plaintiff and transported him to the Shelby County Jail ("Jail").[4] (ECF Nos. 34-1 at PageID 219; 37-2 at PageID 267.) The parties however do not agree about why they arrested him. They dispute whether officers arrested Plaintiff based on a State Board of Parole Violation Warrant or based

---

[2] An RNI number is a unique number assigned to offenders the first time they are arrested in Tennessee. The state assigns the number to the offender based on the offender's fingerprints. Like a social security number, a person's RNI number remains the same over time whether they face charges in the future. Plaintiff's RNI number is 274883. (ECF Nos. 34-1 at PageID 219; 37-2 at PageID 267.) And the RNI number for Plaintiff's son, Demerrick Porter, is 497832. (*Id.*)

[3] Defendants agree to this fact for summary judgment only. (*See* ECF No. 37-2 at PageID 267.)

[4] Defendant Shelby County owns and operates the Jail, while Defendant Bonner has authority to establish policies and procedures at the Jail. (ECF Nos. 34-1 at PageID 219; 37-2 at PageID 267.)

on the arrest warrant issued for his son's indictment.[5]  (*See* ECF No. 41-1 at PageID 310.)[6]  And although each party argues that officers arrested Plaintiff for a reason that benefits their side of this case, neither party has bothered to attach the arrest warrant with this Court.  So this Court remains in the dark over why and under what authority officers arrested Plaintiff here.  That fact is important.

Moving on, the Parole Board charged Plaintiff with violating conditions of his parole.  (ECF Nos. 37-3 at PageID 272; 41-1 at PageID 310.)  Most of those alleged violations seem to be based on Plaintiff's son's indictment.  (ECF No. 37-4 at PageID 277.)  He pleaded not guilty to violating Rules 2 and 12 for theft of property and engaging in threatening or intimidating behavior.  (ECF Nos. 37-3 at PageID 272; 41-1 at PageID 310.)  But he pleaded guilty to violating Rule 9 for testing positive for THC.  (*Id.*)

After arriving at the Shelby County Jail on August 23, the parties apparently agree that Plaintiff remained in custody until a state criminal court entered an Order to release him on

---

[5] Defendants argue that the Court should find that this fact is undisputed.  (*See* ECF No. 42 at PageID 456.)  They do so because Plaintiff did not cite to any evidence to support his "purported dispute" of this fact.  (*Id.*)  But "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record *or show that the materials cited do not establish the absence or presence of a genuine dispute. . . .*"  *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (internal quotations and citations omitted); Fed. R. Civ. P. 56(c)(1)(B).  And here, Plaintiff contends that the evidence Defendants cited in their statement of undisputed facts—Collective Exhibit A—does not establish the absence of a genuine dispute.  (*See* ECF No. 41-1 at PageID 310.)  As a result, the Court finds that this fact is disputed.  The Court further notes that Defendants themselves failed to follow Local Rule 56.1(b).  When responding to Plaintiff's undisputed facts, Defendants did not make their response on a document "in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" as required by the Local Rules.  *See* L.R. 56.1(b).

[6] Plaintiff's response to Defendant's statement of undisputed facts number 7 is confusing.  This Court interprets Plaintiff's response to be that he agrees that authorities arrested Plaintiff on August 23, 2019 but he disputes that the arrest was based on a parole violation warrant.  (*See* ECF No. 41-1 at PageID 310.)  What is more, even if it were a parole violation warrant, Plaintiff argues the reason the parole board issued a warrant is because of the mistaken identity.

4

November 4, 2019. (ECF Nos. 34-1 at PageID 220; 37-2 at PageID 268.) The parties, however, do not agree about under whose authority Plaintiff remained in custody or whether authorities were justified in holding Plaintiff for any of that time.

## II. The Parties' Summary Judgment Motions

Plaintiff now moves for partial summary judgment "as to the issue of Defendants Shelby County, Tennessee and Floyd Bonner, Jr. being in total control of which individuals are held into custody in the Shelby County Jail and the Shelby County Penal Farm." (ECF No. 34 at PageID 215.) Plaintiff argues that Defendants are responsible for all matters in the Shelby County Jail and Penal Farm. (ECF No. 34-1 at PageID 223.)

Defendants responded in opposition and submitted their own cross-motion for partial summary judgment. (ECF No. 37-1 at PageID 253.) They ask that the Court find that (1) Plaintiff violated his parole, giving the Parole Board an independent basis to revoke his parole and require him to serve the remainder of his prison term; (2) Defendants are not in total control of state violation-of-parole prisoners and must defer to the Parole Board for their release dates;[7] (3) Defendants are not liable for Plaintiff's alleged detention during his parole-revocation term; and (4) Defendant Bonner is entitled to qualified immunity. (*Id.* at PageID 265.)

## LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

"A motion for partial summary judgment seeks judgment on part of a claim or defense and is evaluated under the same standard" as a summary judgment motion. *Sachs v. City of Detroit*, 257 F. Supp. 2d 903, 911 (E.D. Mich. 2003). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[7] Defendants further argue that Sheriff Bonner has no control over the Penal Farm. (ECF No. 37-1 at PageID 259–60.)

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may satisfy this burden by showing "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Id.* at 448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.  This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As a result, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Ultimately, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251). And statements in affidavits that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient evidence. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

## ANALYSIS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to find that "Defendants Shelby County, Tennessee and Floyd Bonner, Jr. are in total control of the care and custody of the inmates that are held in the Shelby County Jail and the Shelby County Penal Farm." (ECF No. 34-1 at PageID 229.) Plaintiff claims that under Tennessee law, "[t]he sheriff of the county has, except in cases otherwise provided by law, the custody and charge of the jail of the county and of all prisoners committed to the jail." Tenn. Code Ann. § 41-4-101. He therefore argues that "the black letter of [this] Tennessee statute clearly places all responsibility for the operation of a county jail facility upon the County and Sheriff itself." (ECF No. 34-1 at PageID 223.) He relies on several other Tennessee statute provisions to support this argument, including Tenn. Code Ann. §§ 41-2-108, 8-8-201(3), 8-8-221(a), 41-2-109, and 41-21-107. (*Id.* at PageID 223–29.)

But Defendants argue that the Parole Board had control over Plaintiff's detention, not Defendants. (ECF No. 37-1 at PageID 257.) This is because under Tennessee statute, "[t]he board is charged with determining whether violation of parole conditions exists in specific cases and of deciding the action to be taken in reference to the violation." Tenn. Code Ann. § 40-28-118(c). Defendants thus argue that "[t]he county sheriff is only in control of state prisoners when no other entity is involved, but not when the State (through the Board of Parole, TDOC, or otherwise) is involved." (ECF No. 37-1 at PageID 257.) And so, Defendants claim that the Parole Board—not Defendants—"controls" when to release a prisoner held on a parole-violation warrant. (*Id.* at PageID 258.)

What is more, Defendants also provide evidence that Sheriff Bonner does not run the Penal Farm, and so dispute that Sheriff Bonner has any authority over it. (ECF Nos. 37-1 at PageID 259–60; 37-5 at PageID 281.)

The Court now discusses whether Plaintiff's motion satisfies the Rule 56 requirements for a motion for summary judgment. The Court find that it does not.

## I. Plaintiff's Motion for Summary Judgment Does Not Comply with Rule 56

First off, Plaintiff's motion for summary judgment is inadequate under Federal Rule of Civil Procedure 56. Under that rule,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.

Fed. R. Civ. P. 56(c)(1). The party seeking summary judgment has the "initial responsibility" to explain the basis for its motion and to identify materials on the record that show the lack of a genuine issue of material fact. *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 560 (6th Cir. 2011). The party satisfies this burden by showing "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Id.* at 561; *Minadeo*, 398 F.3d at 761.

Plaintiff fails to carry its summary judgment burden in two ways here. First, Plaintiff does not identify any evidence supporting his motion. In fact, he relies only on his amended complaint and Defendants' answer to support his statement of undisputed facts. And often, where Plaintiff cites Defendants' answer for support, Defendants deny the allegations. (*See* ECF No. 37-2.) Plaintiff simply fails to support his motion with any evidence about Defendants' control of the Jail and Penal Farm.

Plaintiff says that he "relies upon his Statement of Undisputed Facts and his Memorandum in Support of Motion for Partial Summary Judgment and the entire record of this cause [sic]" to support his motion.  (ECF No. 34 at PageID 215.)  But Rule 56(c)(1)(A) "requires that the movant cite the particular parts of the materials that support its fact positions."[8]  Fed. R. Civ. P. 56(c)(1)(A) advisory committee notes; see also *Bruederle*, 687 F.3d at 776.  Plaintiff decided not to do that here.

And second, Plaintiff does not explain how "control" is an element of the claims here.  Plaintiff's complaint raises several different claims under 42 U.S.C. § 1983, including violation of due process, unlawful search and seizure, cruel and unusual punishment, and violations of his right to bail and counsel.  (ECF No. 26 at PageID 142–53.)  But Plaintiff fails to show how Defendants' "total control" of the inmates at the Jail and Penal Farm is essential to these claims.  It is thus unclear why summary judgment is appropriate on this issue.  All in all, Plaintiff fails to support properly his motion or meet his initial burden here.

## II.     Analysis of Plaintiff's Motion for Summary Judgment

Yet even if the Court overlooks the motion's procedural deficiencies, the Court still finds that Plaintiff's summary judgment motion on this issue lacks merit too.  The parties dispute these facts.

Plaintiff claims that there is no dispute that Defendants have "total control" over inmates at the Jail and Penal Farm.  But Defendants argue that control over detainees or inmates in those facilities is more complicated.  They say that control depends in part on why the detainee or

---

[8] Under Rule 56(c)(1)(B), a party need not point to specific materials in the record if it instead responds that the cited materials used by the movant to dispute or support a fact do not establish the absence or presence of a genuine dispute.

inmate resides at the Jail or Penal Farm. For example, according to Defendants, if Plaintiff is a TDOC prisoner, "the sheriff is not authorized to release TDOC prisoners until notified by the TDOC to do so." *Shorts v. Bartholomew*, 278 S.W.3d 268, 279 (Tenn. 2009). Defendants further argue that the Tennessee Board of Parole has control over violation-of-parole prisoners according to Tenn. Code Ann. §§ 40-28-118(b) and 40-28-121(a).

Looking first at section 40-28-188(b), it explains, "[w]hen the director of probation and parole issues a warrant for the retaking of a parolee pursuant to § 40-28-607,[9] the board is charged with determining whether violation of parole conditions exists in specific cases and of deciding the action to be taken in reference to the violation." And § 40-28-121 further states that "[u]pon the issuance of a warrant under § 40-28-607, any officer authorized to serve criminal process, or any peace officer to whom a warrant is delivered, shall execute the warrant by taking the prisoner and returning the prisoner to a prison, workhouse or jail to be held to await the action of the board."

But because neither party provided the Court with the warrant here, it is next to impossible to determine control of Plaintiff. So there is no evidence that the director of probation and parole issued the warrant here.[10] And if the Parole Board issued a parole revocation warrant, there remains a question about whether the officers relied on that warrant to arrest Plaintiff. As a result, it remains a question whether the Tennessee statutes mentioned above apply. Plus, even assuming the statutes apply, Defendants have not convinced the Court that those statutes would divest Defendants of liability here. Even if Defendants lacked authority

---

[9] Section 40-28-607 explains that the director of probation and parole "may issue a warrant for the retaking of the prisoner if the director or the director's designee agrees that parole may have been violated in an important respect." Tenn. Code Ann. § 40-28-607(a).

[10] While it does seem that the Parole Board served a parole violation warrant on August 23, 2019 (*see* ECF No. 37-4 at PageID 275), neither party has attached that warrant as evidence here.

11

to "order the release of a TDOC prisoner serving time in the county jail," that does not mean that they did not have a role in Plaintiff's detention or a duty to investigate whether officers had arrested the right person. *See Shorts*, 278 S.W.3d at 279.

All in all, there is a genuine question of material fact about who had control over the inmates at the Shelby County Jail and Penal Farm, and whether such "control" affects Plaintiff's claims or Defendants' liability here. As a result, the Court **DENIES** Plaintiff's motion for summary judgment.

## ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At the conclusion of their Combined Response to Plaintiff's Motion for Partial Summary Judgment and Memorandum in Support of Defendant's Cross Motion for Partial Summary Judgment Defendants ask the Court to make these findings:

(1) That Plaintiff violated his own parole (with a positive urine screen for marijuana), thus giving the State Board of Parole an independent basis to revoke his parole and require him to serve the remainder of his prison term from his August 23, 2019 arrest through October 16, 2019, regardless of the State's separate identity mix-up between Plaintiff and his son;

(2) That, in any event, the Shelby County Sheriff (and Shelby County, itself) are not in "total control" of state violation-of-parole prisoners and must instead defer to the Tennessee Board of Parole with respect to those prisoners' release dates;

(3) That Shelby County and the Shelby County Sheriff are not liable for Plaintiff's alleged detention during the 55 days of his parole-revocation term based on either Paragraphs 1, 2, or both; and

(4) That Sheriff Bonner, in his individual capacity, is entitled to qualified immunity.

(ECF No. 37-1 at PageID 265.)

## I. Summary Judgment on Plaintiff's Parole Violation

The parties do not dispute that the Parole Board released Plaintiff on parole in 2016. (ECF Nos. 37-3 at PageID 271; 41-1 at PageID 309.) Nor do they dispute that, as a condition of his parole, he agreed to submit to drug tests and that he would not use or have illegal drugs in his possession. (ECF Nos. 37-3 at PageID 271–72; 41-1 at PageID 309.) The parties also agree that the Parole Board charged him with violating four conditions of his parole and that he pleaded guilty to one of them—testing positive for THC. (ECF Nos. 37-3 at PageID 272; 41-1 at PageID 309.)

Defendants now move for summary judgment on this point: "[t]hat Plaintiff violated his own parole, thus giving the State Board of Parole an independent basis to revoke his parole and require him to serve the remainder of his prison term from his August 23, 2019 arrest through October 16, 2019, regardless of the State's separate identity mix-up between Plaintiff and his son." (ECF No. 37-1 at PageID 265.)

The Court finds that there is a genuine issue of material fact about whether Plaintiff's parole violation (testing positive for marijuana) gave the Parole Board an independent basis to revoke Plaintiff's parole. Under Plaintiff's Parole Certificate, he agreed to many conditions on parole. (ECF No. 37-4 at PageID 274.) But the Parole Certificate does not explain what happens when a parolee violates one of these conditions, or how the Parole Board handles violations of parole conditions. What is more, Plaintiff's Notice of Sanction suggests that the Parole Board was not prepared to revoke his parole just for testing positive for marijuana. (*See* ECF No. 41-2 at PageID 312.) The Notice of Sanction says,

> You have violated the conditions of your probation or parole supervision rules as outlined below. The following sanction(s) will be imposed as a result of the

> outlined violation. Failure to comply with these sanctions *may result in a violation report submission* to the court or the Board.

(*Id.* (emphasis added).) This language conveys that not every parole violation leads to a violation report. In fact, Plaintiff's sanction for the drug violation was not parole revocation; instead, his sanction was to "submit to FSW assessment complete recommendations." (*Id.*) And the Tennessee Department of Correction issued the Notice of Sanction in July 2019—a month before the Parole Board revoked his parole. (*Id.*) With this in mind, the material question of what role the son's charges played in the Parole Board seeking its arrest warrant is still unanswered.

Neither party presented evidence about how the Parole Board decides to revoke parole, if violating one condition with a positive drug test always leads to revocation, or if there is a uniform standard for determining when to revoke parole.

All in all, with these unanswered questions and a lack of evidence, this Court cannot conclude that Plaintiff's drug violation gave the Parole Board an independent basis to revoke Plaintiff's parole and hold him in custody. And the Court finds that the issue is not "so one-sided that one party must prevail as a matter of law." *Johnson*, 777 F.3d at 843. As a result, the Court **DENIES** summary judgment on whether Plaintiff violated his parole, giving the Parole Board an independent basis to revoke his parole.

## II.     Total Control over Plaintiff

Defendants also move for summary judgment on whether Defendants had control of Plaintiff during his detention. They ask the Court to find that they "are not in 'total control' of state violation-of-parole prisoners and must instead defer to the Tennessee Board of Parole with respect to such prisoners' release dates," and so "are not liable for Plaintiff's alleged detention during the 55 days of his parole-revocation term." (ECF No. 37-1 at PageID 265.) Plaintiff

14

argues in response that Defendants' motion is "based solely on the assertion that Plaintiff violated his parole," which Plaintiff does not dispute. (ECF No. 41 at PageID 298.) But Plaintiff does dispute that the Parole Board revoked Plaintiff's parole because of his drug violation, and that the Parole Board had control over Plaintiff while he was at the Jail and Penal Farm. (*See* ECF No. 41.)

As the Court explained above, summary judgment is not the proper way to resolve this issue. The Court remains confused about the argument over control. But even if "control" matters, the parties dispute who had control over Plaintiff during his detention. And the undisputed facts do not show that Defendant is entitled to summary judgment on this issue. Nor do the parole documents and declarations provided by Defendants. (*See* ECF Nos. 37-4, 37-5 & 37-6.) The parole documents show that Plaintiff was on parole and that the Parole Board revoked his parole. (*See* ECF No. 37-4.) But they show nothing more. Indeed, there are still many questions of fact about when and why the Parole Board revoked Plaintiff's parole. For example, did the mistake with Plaintiff's son's RNI number affect the issuance of the warrant here? There is also a question about how the parole revocation affects Defendants' liability here.

All in all, there are still genuine disputes of material facts surrounding these issues. As a result, the Court **DENIES** Defendants' partial motion for summary judgment.

## III. Whether Defendant Bonner Is Entitled to Qualified Immunity

### A. Qualified Immunity Standard

Government officials "are immune from civil liability, unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)). To determine whether qualified immunity applies, a

court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal references and citations omitted). Under this standard, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The doctrine allows government officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (citations and quotations omitted). The Sixth Circuit "has long recognized that the purpose of this doctrine is to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Nelson v. City of Battle Creek, Mich.*, No. 18-1282, 2020 WL 916966, at *2 (6th Cir. Feb. 26, 2020) (quoting *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005)). "Once the defending officer raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *Coble v. City of White House*, 634 F.3d 865, 870–71 (6th Cir. 2011)).

### B. Clearly Established Rights

Government officials "are immune from civil liability, unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Mullins*, 805 F.3d at 765. A "clearly established right" is one "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

16

"There need not be 'a case directly on point' for the law to be clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Nelson*, 2020 WL 916966, at *3 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "To violate a plaintiff's clearly established right, an officer's conduct must be such that, at the time of the allegedly-violative conduct, the contours of that right were sufficiently defined that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson*, 483 U.S. at 640).

In determining whether a right is clearly established, the Court looks to decisions of the Supreme Court, then to decisions of the Sixth Circuit, and finally to other courts of appeal, and asks whether these precedents placed the constitutional question at issue "beyond debate." *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (citing *Ashcroft*, 563 U.S. at 741). District court decisions do not constitute clearly established law. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. . . . Otherwise said, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02(1)(d), p. 134–36 (3d ed. 2011))).

### C. Analysis of Defendant Bonner's Qualified Immunity Claims

Defendants argue that Defendant Bonner is entitled to qualified immunity on Plaintiff's claims. They argue that "[e]ven taking Plaintiff's version of events as true, he was arrested not by Shelby County personnel, but by a Memphis Police Officer and based on a state violation-of-parole warrant." (ECF No. 37-1 at PageID 264.) And because Tennessee statute required

17

Defendant Bonner to hold Plaintiff in jail while waiting for direction from the Parole Board, they argue that he did not violate Plaintiff's constitutional rights. (*Id.* (citing Tenn. Code Ann. § 40-28-121(a)).) In his response, Plaintiff argues that Defendants did in fact violate Plaintiff's constitutional rights and that qualified immunity is still in dispute. (ECF No. 41 at PageID 306–07.)

The "right to be free of continued detention without probable cause" is clearly established. *Gregory v. City of Louisville*, 444 F.3d 725, 749–50 (6th Cir. 2006) (finding the right clearly established "well before" 1993). And as explained above, the parties dispute Defendants' role in Plaintiff's arrest and detention here. It is thus unclear whether Defendants violated Plaintiff's clearly established right to be free of continued detention without probable cause.

So at first glance, it seems like there is still a genuine issue of material fact about whether Defendant Bonner violated Plaintiff's clearly established rights. But Plaintiff's claims against Defendant Bonner ultimately fail. This is because Plaintiff does not allege that Defendant Bonner was "personally involved in the unconstitutional action that caused plaintiff's injury." *See Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020).

Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. And so, under § 1983, plaintiffs can hold individual officers liable in their personal capacities for violating constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In fact, "Section 1983 creates a 'species of tort liability' for constitutional violations." *Pineda*, 977 F.3d at 490 (quoting *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017)). This means that, to be liable under Section 1983, a defendant must be "personally involved in the unconstitutional action that caused plaintiff's injury." *Id.* at 491. Put differently, Plaintiff "may hold a high-ranking local official such as Sheriff [Bonner] personally liable under § 1983 only if that official's own unconstitutional actions caused the injury." *Pineda*, 977 F.3d at 494.

In *Pineda*, the plaintiff alleged that the county sheriff was personally liable for the sheriff office's failure to investigate his excessive force claims. *Id.* at 494–95. The Sixth Circuit noted that the plaintiff "presents no evidence that Sheriff Neil even knew of [the plaintiff's] claim, let alone failed to investigate it. And because Neil can be found liable only for his *own* actions, [the plaintiff] has no evidence whatsoever against the sheriff in his personal capacity." *Id.* at 496.

So too here. Plaintiff does not allege (let alone provide proof) that Defendant Bonner was the officer that arrested or detained him. Nor does Plaintiff claim that Defendant Bonner knew or should have known he was innocent and detained him anyway. In response to a motion for summary judgment, "a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Id.* at 491. In the end, Plaintiff has not alleged or presented any evidence that Defendant Bonner knew of Plaintiff's specific claims or that he personally caused a violation of Plaintiff's rights.

Instead, Plaintiff argues that "Defendant Bonner signed off on a number of policies and procedures that are the subject of this litigation" and that he is a "final decision maker" for the Sheriff's Department. (ECF No. 41 at PageID 306.) And he attaches 132 pages of Shelby County policies and procedures in support of his argument. (ECF Nos. 41-9 & 41-10.) But being responsible for implementing Shelby County's policies and procedures does not mean that

19

Defendant Bonner was personally involved in the constitutional deprivations here.  Even if the County's liability "may be premised on its policymaker's deliberate indifference," Plaintiff can only hold Defendant Bonner liable in his individual capacity if he "either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Harvey*, 453 F. App'x at 563 (internal quotations omitted).  The bottom line is that Plaintiff provides no evidence that Defendant Bonner directly participated in the arrest or detention of Plaintiff.

In the end, there is no genuine issue of material fact in this record as to Defendant Bonner's individual liability here.  The Court therefore finds that Defendant Bonner is entitled to qualified immunity and **GRANTS** the motion for summary judgment on this issue.  The Court further **DISMISSES** Plaintiff's claims against Defendant Bonner in his individual capacity.

## CONCLUSION

There are still many unanswered questions here as well as a lack of evidence.  As a result, the Court **DENIES** Plaintiff's motion for partial summary judgment.  The Court further **GRANTS IN PART AND DENIES IN PART** Defendants' motion for partial summary judgment.  The Court **GRANTS** Defendant's motion for summary judgment on Defendant Bonner's qualified immunity.  But it **DENIES** summary judgment on the other issues raised in Defendants' motion.

**SO ORDERED**, this 28th day of April, 2021.

                                            s/Thomas L. Parker
                                            THOMAS L. PARKER
                                            UNITED STATES DISTRICT JUDGE