# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| DEMERRICK RATLIFF (PORTER), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02012-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| SHELBY COUNTY, TENNESSEE, LEE | ) | |
| HARRIS, Individually and in his official | ) | |
| capacity, and FLOYD BONNER, JR., | ) | |
| Individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Demerrick Ratliff (Porter) sued Defendants Shelby County, Tennessee, and Floyd Bonner, Jr. under 42 U.S.C. § 1983, alleging that they wrongfully arrested and detained him based on mistaken identity. (ECF No. 26 at PageID 132–35.) The parties then filed cross-motions for partial summary judgment. (ECF Nos. 34 & 37.) The Court denied Plaintiff's motion and granted in part Defendants' motion. (ECF No. 49.) The Court granted Defendant Bonner summary judgment on the claims against him in his individual capacity based on qualified immunity.[1] (*Id.* at PageID 512.) The Court denied Defendants' summary judgment motion for the claims against Defendant Shelby County. (*Id.*)

---

[1] Plaintiff also sued Defendant Bonner in his official capacity. (ECF No. 26 at PageID 132.) But "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020) (quoting *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Official-capacity claims are therefore "superfluous" where the municipality is also a party to suit. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013); *see also Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir.

Shelby County now moves again for summary judgment.  (ECF No. 62.)  Plaintiff has responded.  (ECF No. 68.)  Defendant has replied.  (ECF No. 72.)  And Plaintiff has filed a sur-reply.[2]  (ECF No. 79.)  For the reasons below, the Court finds that Defendant Shelby County is entitled to summary judgment on Plaintiff's remaining claims.  The Court therefore **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND

Defendant's summary judgment motion includes a statement of undisputed facts.  (ECF No.  62-2 at PageID 572–84.)  Plaintiff responded to the statement of facts.  (ECF No. 68-1.)  But his response lacked support from the record on many issues.  And under Rule 56 of the Federal Rules of Civil Procedure:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.

Fed. R. Civ. P. 56(c)(1).

When a party fails to assert a fact or challenge an assertion of fact properly, Rule 56(e) permits the court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—

---

2014).  And so Shelby County is the only true Defendant remaining here.  *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

[2] Defendant also moves to strike Plaintiff's sur-reply.  (ECF No. 80.)  Plaintiff has responded. (ECF No. 86.)

show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).  And the Court need not

consider any unsupported factual assertions or materials not cited by the parties.  *See* Fed. R.

Civ. P. 56(c)(3); *see also Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015)

("'[C]onclusory and unsupported allegations, rooted in speculation,' are insufficient to create a

genuine dispute of material fact for trial."  (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 253

(6th Cir. 2003))).  What is more, "[a] party may object that the material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ.

P. 56(c)(2).  So these facts are undisputed unless otherwise stated.[3]

## I.     Undisputed Facts

Before delving into the specifics, the Court will give an overview of this case.  Plaintiff

went by the name Demerrick Javon Porter at one time.[4]  (ECF Nos. 62-9 at PageID 855–56; 68-

20 at PageID 1224.)  And Plaintiff's son's name is Demerrick Javon Porter, Jr.  (ECF No. 62-9 at

PageID 856.)  In May 2019, a state grand jury returned an indictment against Plaintiff's son for

theft of property in case number 19-03836.  (ECF No. 68-12 at PageID 1192.)  At that time,

Plaintiff was on parole.  (ECF No. 62-9 at PageID 865.)  Plaintiff's parole officer, Kenneth

Wakham, an employee of the Tennessee Department of Corrections ("TDOC"), noticed the theft

of property charge while searching a Shelby County government website for new charges or

warrants for Plaintiff.  (ECF Nos. 62-8 at PageID 839–40; 68-3 at PageID 1146–47.)

---

[3] Plaintiff disputes many of Defendant's factual assertions.  (ECF No. 68-1.)  But some of
Plaintiff's responses do not cite evidence that disputes the facts asserted.  For example, to oppose
Defendant's assertion that Shelby County has policies to safeguard against instances of mistaken
identity, Plaintiff asserted that Shelby County did not follow those policies in relation to his case.
(*Id.* at PageID 1110–11.)  Even if so, Plaintiff does not dispute that the County has such policies.
And so the Court will consider Defendant's factual assertions, to which Plaintiff did not properly
object, undisputed.  *See* Fed. R. Civ. P. 56(e).
[4] Plaintiff testified at his deposition that he changed his last name to Ratliff when he was
eighteen or nineteen years old.  (ECF No. 68-20 at PageID 1226.)

3

Thinking the theft charge related to Plaintiff, Wakham then generated a request to issue for a parole revocation warrant for Plaintiff.  (ECF Nos. 62-8 at PageID 839; 68-3 at PageID 1146.)  The TDOC issued the warrant.  (ECF No. 62-10 at PageID 911–12, 916.)  And a Memphis Police Department ("MPD") Officer arrested Plaintiff on that warrant and transported him to the Shelby County Criminal Justice Center ("Shelby County Jail" or "201 Poplar").  (ECF Nos. 62-12 at PageID 926; 63-3 at PageID 967.)  Plaintiff's claims involve his arrest and later detention at Shelby County facilities.

### A.    The Mistake in Identity

When law enforcement arrests someone for the first time in Shelby County, Tennessee, the Shelby County Sheriff's Office ("SCSO") assigns that person a unique and permanent identification number, known as a Records and Identification ("RNI" or "R&I") number and links that number to the offender's fingerprints during the booking process.  (ECF Nos. 62-3 at PageID 589; 62-13 at PageID 929.)  Plaintiff's RNI number is 274883, and the RNI number for Plaintiff's son is 497832. (ECF No. 26 at PageID 133–34.)  The parties agree that Plaintiff's RNI was mistakenly associated with the theft of property charge, although they dispute who is responsible.  (ECF Nos. 62-2 at PageID 583; 68-1 at PageID 1110–27; 72 at PageID 1245.)

Defendant asserts that the State Attorney General mixed up Plaintiff's RNI number with that of his son.  (ECF Nos. 62-2 at PageID 583.)  Plaintiff alleges that Shelby County is responsible for the mistake but does not identify any Shelby County employee who specifically committed the error.[5]  (ECF No. 68 at PageID 1093–94.)  In reply, Defendant concedes for summary judgment purposes that an unidentified Shelby County employee committed the error

---

[5] Plaintiff implies—without evidentiary support—that a Shelby County court clerk mistakenly associated his RNI number with the theft of property charge for his son.  (ECF No. 68 at PageID 1094–95.)

in data entry and that Plaintiff's RNI number appeared by mistake on some of his son's court documents.  (ECF No. 72 at PageID 1243, 1245.)

Shelby County stores RNI numbers in a computer database known as the Offender Management System ("OMS"), which the SCSO uses for informational tracking.[6]  (ECF Nos. 62-3 at PageID 589, 642, 661; 68-4 at PageID 1158–61.)  The County also maintains and operates a computerized database called the Odyssey system, which the SCSO uses for informational tracking and "to maintain records generated by General Sessions and Criminal Courts."  (ECF Nos. 62-3 at PageID 589; 68-3 at PageID 1150; 68-4 at PageID 1158, 1168.)  The OMS and Odyssey systems link and interface with one another through an information hub. (ECF Nos. 62-3 at PageID 589–90; 68-4 at PageID 1159.)   Plaintiff attached to his response Odyssey system printouts of case summaries related to the theft of property charge.[7]  (ECF Nos. 68-7 at PageID 1182; 68-8 at PageID 1183; 68-13 at PageID 1193.)  Those printouts list both Plaintiff's RNI number and that of his son.  (ECF Nos. 68-7 at PageID 1182; 68-8 at PageID 1183; 68-13 at PageID 1193.)

---

[6] The OMS system tracks inmate movement within the Jail and release information.  (ECF No. 62-3 at PageID 589–90.)  The SCSO also maintains hard copies of inmate records as part of the OMS.  (*Id.*)  This system is now called the Offender Management System Evolution ("OMSE"). (ECF Nos. 62-5 at PageID 792; 68-4 at PageID 1157.)

[7] Defendant objects to the authenticity and admissibility of these case summary printouts.  (ECF No. 72 at PageID 1247.)  Plaintiff asserts that the documents are admissible as business records and that IT analyst Terri Martin-Stanton authenticated them during her deposition.  (ECF No. 79 at PageID 1276–77.)  True enough, Martin-Stanton identified two of the exhibits (ECF Nos. 68-7 & 68-8) as case summary printouts from the Odyssey system.  (ECF No. 68-4 at PageID 1166, 1168.)  But she did not address the remaining two-page document.  (ECF No. 68-13.)  That document's first page appears in one of the other exhibits Martin-Stanton identified.  (ECF Nos. 68-7 at PageID 1182; 68-13 at PageID 1193.)  But the additional page does not.  (ECF Nos. 68-7 at PageID 1182; 79-7 at PageID 1351.)  And so the Court will disregard that added page.  (ECF No. 68-13 at PageID 1194.)  The Court overrules the objections to the other exhibits.

Parole Officer Wakham testified at his deposition that he found the theft of property charge while searching for new charges or warrants for Plaintiff on a Shelby County website, which he called "the Shelby County Portal."[8]  (ECF Nos. 62-8 at PageID 839–40; 68-3 at PageID 1146–47.)  Wakham then generated the request for a parole revocation warrant.  (ECF No. 62-8 at PageID 839.)

### B.    The Parole Revocation Warrant

Plaintiff is a Tennessee state parolee.  The Tennessee Board of Parole (the "Parole Board") released Plaintiff on parole in April 2016.  (ECF No. 62-9 at PageID 865.)  Plaintiff agreed in writing to thirteen numbered terms as conditions of his parole.  (ECF Nos. 62-9 at PageID 865–66, 884–85, 893.)  For example, in Condition 2, Plaintiff agreed to "obey the laws of the United States or any state" and local ordinances where he lives.  (ECF No. 62-9 at PageID 893.)  And in Condition Number 9, Plaintiff agreed not to use or have illegal drugs and to undergo random drug testing.  (ECF No. 62-9 at PageID 893.)  Plaintiff often smoked marijuana about twice a week while on parole.  (ECF No. 62-9 at PageID 866.)  And Plaintiff used cocaine at some point during 2018.  (ECF No. 62-9 at PageID 866.)  The Tennessee Department of Correction ("TDOC") issued a Notice of Sanction to Plaintiff for violating his parole in July 2019 by failing more than one drug screening.  (ECF Nos. 68-6 at PageID 1180.)

In early August  2019, the TDOC issued a State Warrant for Plaintiff under Tenn. Code Ann. § 40-28-607.  (ECF No. 62-10 at PageID 911–12, 916.)  The warrant identified its subject as Demerrick Ratliff and stated that the State had conditionally paroled him from the Shelby

---

[8] This website permits users to access information or records stored on the Odyssey system. (ECF Nos. 62-3 at PageID 589; 68-4 at PageID 1158.)  According to Wakham, during the computer search, Plaintiff's name "popped up along with the charges."  (ECF No. 68-3, PageID 1146.)

County Corrections Center in April 2016.  (ECF No. 62-10 at PageID 916.)  The warrant stated

that "AS A PAROLE VIOLATOR, THIS PAROLEE IS NOT BONDABLE UNDER

AUTHORITY OF T.C.A. SECTION 40-28-121."  (ECF No. 62-10 at PageID 916.)  The back

side of the warrant, labeled "State of Tennessee Department of Correction PAROLE

VIOLATION WARRANT," contains Plaintiff's name, alias as Demerrick Porter, date of birth,

home address, and social security number.  (ECF No. 63-2 at PageID 966.)

      Charles Henderson, a TDOC Warrant Officer at the time, verified the information on the

warrant and signed it.  (ECF No. 62-10 at PageID 910–12.)  Henderson also wrote Plaintiff's

RNI number on the back of the warrant.  (ECF Nos. 62-10 at PageID 913; 63-2 at PageID 966.)

Three days later, the TDOC issued a letter identifying Plaintiff by name with his TDOC

identification number and stating:

> Please be advised that under the authority vested in the Director of
> Probation and Parole by T.C.A. 40-28-607 the above subject is hereby declared
> delinquent, thereby stopping his/her credit time on the sentence under which he/she
> was paroled.  This action will not affect the decision to be made by the Board of
> Parole at the final revocation hearing.  The parolee will stop earning credit for the
> service of his/her sentence as of 8/5/2019 until the parole violation warrant is served
> and the parolee is housed in a correctional facility in Tennessee or until such time
> as the Board of Parole may remove said delinquency.

(ECF No. 62-11 at PageID 925.)  Plaintiff does not dispute that he was the subject of the State

warrant.  (ECF No. 68-1 at PageID 1117.)

    **C.**    **The Arrest and Detention**

      On August 23, 2019, Memphis Police Department ("MPD") Officer Brandon Westrich

detained Plaintiff based on the State Violation of Parole Warrant.  (ECF Nos. 62-12 at PageID

926; 63-3 at PageID 967.)  After stopping Plaintiff's vehicle, Officer Westrich called MPD

Station B and verified that the State Warrant for Plaintiff was active.  (ECF No. 62-12 at PageID

926.)  Officer Westrich then placed Plaintiff under arrest and transported him to the Shelby

County Criminal Justice Center ("Shelby County Jail" or "201 Poplar").  (ECF Nos. 62-12 at PageID 926; 63-3 at PageID 967.)

Once there, the jail staff checked Plaintiff's RNI number against his fingerprints to confirm he was the person described in the warrant.[9]  (ECF Nos. 62-12 at PageID 926; 63-3 at PageID 967; 62-13 at PageID 929; ECF No. 63-4 at PageID 968.)  While at the Shelby County Jail, Plaintiff did not ask to speak to a lawyer, did not file a written grievance using the jail's grievance procedures, and did not petition for a writ of habeas corpus.  (ECF No. 62-9 at PageID 868, 871.)  But according to Plaintiff, he did orally complain to Shelby County Jail personnel that he was innocent.  (ECF No. 68-17 at PageID 1204.)

Parole Officer Wakham visited Plaintiff a week after his arrest.  (ECF No. 62-9 at PageID 870.)  During this visit, Wakham informed Plaintiff that he was being held because of a theft of property and because Plaintiff failed a drug screen.[10]  (*Id.* at PageID 870.)  Plaintiff admitted to failing his drug screen but denied committing theft of property.  (ECF Nos. 62-8 at PageID 842; 62-9 at PageID 870.)  Wakham told Plaintiff that he would receive a parole revocation hearing and gave Plaintiff a Notice of Charges and Explanation of Rights Form.  (ECF Nos. 62-8 at PageID 842; 62-9 at PageID 870, 884–85, 895–96.)  Plaintiff signed both pages of the form. (ECF No. 62-9 at PageID 884–88, 895–96.)

On the first page, Plaintiff placed his initials and checked the box next to the statement "I waive my right to a Probable Cause Hearing and by doing so understand I will be scheduled for a

---

[9] Plaintiff disputes this fact, claiming that during the intake process at Shelby County Jail, booking personnel printed a picture of Plaintiff's son instead of him.  (ECF No. 68-17 at PageID 1201–02.)

[10] Plaintiff highlights Wakham's deposition testimony that he would not have generated the warrant request if Plaintiff had only failed the drug screens.  (ECF No. 68-3 at PageID 1147.) Wakham also testified that after Plaintiff's arrest on the warrant, he would have to stay in custody until the State lifted the warrant.  (*Id.*)

Revocation Hearing as soon as possible." (*Id.* at PageID 885–87, 895.)  On the second page, Plaintiff pleaded guilty to testing positive for marijuana by writing "G" in the plea box next to that offense and placing his initials in the corresponding box.  (ECF No. 62-9 at PageID 887–88, 896.)  Plaintiff pleaded not guilty to the theft of property charge by writing "NG" in the plea box next to that offense and signing his initials.  (ECF No. 62-9 at PageID 887–88, 896.)  The parties agree that no Shelby County employee pressured or coerced Plaintiff to sign or place his initials anywhere on the form.  (ECF No. 62-9 at PageID 887.)

In early September 2019, authorities transferred Plaintiff from the Shelby County Jail to the Shelby County Division of Corrections ("SCDOC" or "the Penal Farm").  (ECF Nos. 62-9 at PageID 869; 62-13 at PageID 929.)  Shelby County employees at the Penal Farm verified that Plaintiff was the subject of the State parole revocation warrant after he arrived.  (ECF Nos. 62-13 at PageID 929; 63-4 at PageID 968.)  The next day, TDOC Probation Parole Program personnel began arranging Plaintiff's parole revocation proceedings.  (ECF No. 62-14 at PageID 931.)

While at the Penal Farm, Plaintiff told guards, a lieutenant, a counselor, and other inmates that the police had wrongfully arrested him for a crime he did not commit.  (ECF No. 62-9 at PageID 874.)  Shelby County Penal Farm employees responded by telling Plaintiff that the Parole Board would address his claim of innocence at his revocation hearing.  (*Id.* at PageID 875.)  Plaintiff never appeared before a judge or talked to a lawyer.[11]  (ECF No. 68-14 at PageID 1195–97.)

---

[11] Plaintiff testified at his deposition that Defendant took him to court three times but never appeared before a judge.  (ECF No. 68-14 at PageID 1195–98.)  On each occasion, Plaintiff saw his son go into the courtroom while Plaintiff waited outside in an area for detainees.  (*Id.* at PageID 1196.)  Then the officers would transport Plaintiff back to the Penal Farm.  (*Id.*)

### D.      **Parole Revocation Hearing**

On September 16, 2019, Parole Officer Wakham completed a Request for Probable

Cause/Revocation/Post-Parole Rescission Hearing Form.  (ECF No. 62-8 at PageID 838–41,

850.)  That form says that Plaintiff violated Rules 2, 9, and 12 of his parole.  (ECF No. 62-8 at

PageID 850.)  Rule 9 refers to drug use.  (*Id.* at PageID 849.)  In the form's comments section,

Wakham wrote, "I will be trying to locate the investigator of this indictment," referring to the

theft charge against Plaintiff's son.  (*Id.* at PageID 840, 850.)  Wakham called and left messages

for the MPD detective who investigated the theft, but the MPD detective never called him back.

(*Id.* at PageID 840–41.)

About four days later, the Parole Board notified Plaintiff that his parole revocation

hearing would take place at the Penal Farm on October 10, 2019, and that Plaintiff would receive

notice "of the Parole Board's final decision in writing."  (ECF No. 62-9 at PageID 883, 894.)

The Parole Board started Plaintiff's parole revocation as scheduled.  (ECF Nos. 62-8 at PageID

845; 62-9 at PageID 876.)  Penal Farm staff provided a space for the Parole Board to conduct the

hearing.  (ECF No. 62-5 at PageID 789–90.)  No Shelby County personnel attended the hearing

aside from a guard.  (ECF No. 62-9 at PageID 877.)

During the hearing, the Parole Board representative told Plaintiff that he had violated his

parole based on the theft of property and the failed drug screen.  (*Id.* at PageID 876–77.)

Plaintiff admitted to his guilt on the drug screen charge but denied committing the theft of

property.  (*Id.* at PageID 877.)  Parole Officer Wakham then requested that the Parole Board

reset the remainder of the hearing so Wakham could have more time to contact the MPD

detective investigating the theft charges.  (ECF Nos. 62-8 at PageID 846; 62-9 at PageID 878.)

The Parole Board reset the remainder of the hearing.  (ECF Nos. 62-8 at PageID 846; 62-9 at PageID 878–79.)

And during the interim, Wakham determined that the theft of property charge was mistakenly associated with Plaintiff's RNI.  (ECF No. 68-3 at PageID 1151–52.)  Wakham discovered the mistake by comparing Plaintiff's profile in the Odyssey system to a file for Plaintiff's son Wakham obtained from the Penal Farm.[12]  (*Id.*)

### E.    Warrant Withdrawal and Plaintiff's Release

On October 25, 2019, the TDOC issued a Warrant Retrieval Memorandum to Shelby County Jail and the Local Sheriff/Fugitive Department, stating that they were holding Plaintiff was "in [Shelby County's] facility under TDOC arrest warrant #A86946" and that the TDOC was "[w]ithdrawing [its] warrant and no longer wish[ed] [Shelby County] to hold this person on [its] behalf."  (ECF No. 62-10 at PageID 917.)  The SDOC then discharged Plaintiff and transferred him back to the Shelby County Jail.  (ECF No. 26 at PageID 137.)

Despite the TDOC's memorandum and withdrawal of the warrant, the Shelby County Jail held Plaintiff for many more days.  Even still, Plaintiff did not tell anyone else that he was being wrongfully detained.  (ECF No. 62-9 at PageID 881.)  What is more, Plaintiff did not file a grievance through the Jail's grievance procedure or petition for a writ of habeas corpus.  (*Id.* at PageID 881–82.)

On November 1, 2019, Plaintiff's attorney, Daniel Mickiewicz, emailed State

---

[12] Plaintiff emphasizes that Parole Officer Wakham testified during his deposition that if he had received the "documents that proved" the indictment was for Plaintiff's son, not Plaintiff, that there was a "high possibility" Plaintiff "could have been released before."  (ECF No. 68-3 at PageID 1152.)  But as stated above, Wakham also testified that once arrested on the State parole revocation warrant, Plaintiff would have to stay in custody until the State lifted the warrant.  (*Id.* at PageID 1147.)

prosecutor Steve Ragland to advise him that the jail was holding Plaintiff on a detainer related to Plaintiff's son.  (ECF No. 62-15 at PageID 932.)  The jail released Plaintiff on November 4, 2019, after a total detention of seventy-three days.  (ECF No. 26 at PageID 137.)  Next, the Court will turn to the relevant Shelby County policies and procedures.

   F.   **Shelby County Procedures**

   As for claims of innocence, Detainees in Shelby County Jail and at the Penal Farm often approach Shelby County personnel and claim to be innocent of the charges against them.  (ECF Nos. 62-3 at PageID 586; 62-5 at PageID 789.)  And so the SCSO has procedures in place designed to prevent wrongful detentions based on mistaken identity.  (ECF No. 62-3 at PageID 586–87.)  One example is confirming each detainee's identity during the booking process.  (*Id.* at PageID 587, 589.)  According to SCSO procedure for admittance and processing, "[a]ll those arrested and taken through the booking process shall be positively identified by fingerprints." (*Id.* at PageID 589.)  This involves running each offender's fingerprints through the Automated Fingerprint Identification System ("AFIS").[13]  (ECF Nos. 62-3 at PageID 589; 62-13 at PageID 929.)

   Intake staff "ensure that the arrest ticket is complete and the charges have been validated by the Judicial Commissioner."  (ECF No. 62-3 at PageID 589.)  During the booking process, intake staff "enter in OMS the arrestee's name, sex, and DOB as it appears on the arrest ticket and complete a thumbprint scan on the AFIS system to verify the identity of the arrestee."  (*Id.* at PageID 589.)  The SCSO assigns first-time arrestees an RNI number and links it to their fingerprints.  (ECF Nos. 62-3 at PageID 589; 62-13 at PageID 929.)  If the arrestee already has

---

[13] The AFIS system is a "biometric identification methodology that uses digital imaging technology to obtain, store, and analyze fingerprint data."  (ECF No. 62-3 at PageID 588.)

an RNI number, the staff verifies the arrestee's identity by running his fingerprints through the AFIS system and confirming that the person with those fingerprints is the same person identified in the warrant.  (ECF Nos. 62-3 at PageID 589; 62-13 at PageID 929.)  If the staff cannot verify a detainee's identification because the fingerprints or other identifying characteristics do not match those of the person described in the warrant, they will arrange to have that individual appear in court sooner than normal to address any discrepancies in the warrant.  (ECF No. 62-3 at PageID 587.)

The SCDOC also has policies governing the intake and release of prisoners that include safeguards against wrongful detentions based on mistaken identity.  (ECF No. 62-5 at PageID 789.)  These safeguards include requirements for verifying prisoner's identities.  (*Id.* at PageID 789, 793–94.)  For example, the SCDOC's inmate acceptance requirements include that "[p]arole violators shall be accompanied by a state warrant."  (*Id.* at PageID 789, 794.)

## II.   **Plaintiff's Factual Assertions and Evidentiary Disputes**

Under the Local Rules of this Court, "the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."  LR 56.1(b).  Plaintiff did not include a separate statement of facts in response to Defendant's motion for summary judgment.  Plaintiff instead added his own facts as part of his responses to Defendant's statement of facts.  (ECF No. 68-1.)  Plaintiff attached a separate statement of facts to his sur-reply, which mostly reiterated his objections.  (ECF No. 79-1.)  Rather than respond to Plaintiff's statement of facts, Defendant moved to strike the sur-reply.[14]  (ECF No. 80.)  The Court addressed many points in dispute above.  A few assertions merit more discussion.

---

[14] The Court addresses the motion to strike below.

## A.       Reason for Detention

Plaintiff asserts that Shelby County held him both on the State warrant and on the theft of

property charge.  (ECF Nos. 68 at PageID 1091–92; 68-1 at PageID 1112, 1117, 1123.)  To

support this assertion, Plaintiff cites to the theft of property indictment (ECF No. 68-12), the

Odyssey system case summary[15] (ECF No. 68-13), his deposition testimony (ECF No. 68-14),

and an email from county employee Sherry McGee to TDOC employee Melinda Toney[16] (ECF

No. 68-15).  Defendant argues that these exhibits do not show that it held Plaintiff on the theft of

property charge.  (ECF No. 72 at PageID 1245–46.)  Indeed, Plaintiff offers little explanation

about the significance of these exhibits.  (ECF No. 68 at PageID 1091–92.)  And Plaintiff's sur-

reply does not respond to Defendant's argument on this point .  (ECF No. 79.)

Plaintiff's assertion that Shelby County held him on the theft of property charge seems

strange, especially since he concedes that the MPD Officer arrested him only on the State parole

revocation warrant.  (ECF No. 68-1 at PageID 1117–18.)  Plaintiff also concedes that he was the

subject of the State parole violation warrant.  (*Id.*)  And Plaintiff never argues that he was

indicted or charged with theft of property—he claims instead that "Shelby County erroneously

---

[15] The Court found above that only the first page of the Odyssey system case summary is admissible.  (ECF No. 68-13 at PageID 1193.)

[16] Defendant argues that Plaintiff has not established the authenticity and admissibility of the email conversations between McGee and Toney.  (ECF No. 72 at PageID 1247.)  Plaintiff responds that because Defendant identifies McGee as a potential witness and because McGee authored the emails, these exhibits are admissible.  (ECF No. 79 at PageID 1277.)  But one of the exhibits contains an email from Toney, and Plaintiff has not tried to explain the admissibility of that message.  (ECF No. 68-16 at PageID 1200.)  "Just as a party can waive an objection to summary judgment evidence by failing to raise it in a timely manner, a party can waive its opportunity to meet an objection by failing to address it."  *Bolden v. Lake Cnty. Bd. of Educ.*, No. 1:19-cv-01262-STA-jay, 2021 WL 4930318, at *5 (W.D. Tenn. Oct. 21, 2021).  Because Plaintiff did not address the objection to Toney's email, the Court could disregard that exhibit.  (ECF No. 68-16.)   All the same, as explained below, even if the Court accepts Plaintiff's interpretations, these emails make no difference here.

14

placed [his RNI number] in the computer system . . . rather than [his] son['s]."  (*Id.* at PageID 1123.)  Plaintiff acknowledges in his response that the indictment for theft of property related to his son.[17]  (ECF No. 68 at PageID 1101, 1105.)  Plaintiff also does not assert that the State prosecuted him for theft of property—he claims only that Shelby County held him on the theft of property charge.  (ECF Nos. 68 at PageID 1091–92; 68-1 at PageID 1112, 1117, 1123.)

Plaintiff's son's indictment for theft of property offers no support for this assertion about why Defendant held Plaintiff in custody.  (ECF No. 68-12 at PageID 1192.)  As stated above, Plaintiff acknowledges that the State did not indicte or charge him with theft of property.  Indeed, the indictment names Demerrick Porter, a name used only by Plaintiff's son.  (ECF Nos. 68-1 at PageID 1115; 68-12 at PageID 1192; 68-20 at PageID 1226; 79-1 at PageID 1284–85.)  The Odyssey case summary printout does not support Plaintiff's assertion either.  True enough, it lists Plaintiff's RNI number in one section of the page, but it lists his son's RNI number in another.  (ECF No. 68-13 at PageID 1193.)  Neither the case summary printout nor the indictment contains any information about whether the County detained Plaintiff on the theft of property charge.  (ECF Nos. 68-12 at PageID 1192; 68-13 at PageID 1193.)

Next, there is the email from county employee Sherry McGee to TDOC employee Melinda Toney.  (ECF No. 68-15.)  Plaintiff offers little explanation of the context or significance of these emails.  And the email does not mention the theft of property charge.  (*Id.* at PageID 1199.)  McGee's email states: "The parole violation warrant was withdrawn on this

---

[17] Plaintiff states in his response that "[he] would have [been] released once documentation was approved showing that the theft of property charge was not his," and that "[h]e always maintained that the charge was that of his son."  (ECF No. 68 at PageID 1101, 1105.)  He also states that Parole Officer Wakham "tr[ied] to contact the investigator to see if Mr. Ratliff was the actual person charged."  (*Id.* at PageID 1099.)  Plaintiff also argues that the State provided his son with "a hearing, a lawyer, bail, and the right to enter a plea" on the theft of property charge.  (*Id.* at PageID 1104.)

inmate and he was released (back on parole?) but with a detainer to SCSO (Shelby County Sheriff's Office) to 79A on 10/29/2019 at 15:00.  I am not sure how to make the movement. Help?"  (ECF No. 68-15 at PageID 1199.)  The record here lacks evidence about how the Court should interpret this email or how it proves that Plaintiff "was simultaneously being held on the [State warrant and] underlying charge of theft of property."  (ECF No. 68 at PageID 1091.)  The email references a detainer, but it does not mention the theft of property charge.  Plaintiff unfortunately chose not to depose either McGee or Toney to explain the context and meaning here.

Lastly, there is Plaintiff's deposition testimony that Shelby County employees transported him to court three times for appearances but that he never appeared before a judge. (ECF No. 68-14 at PageID 1195–98.)  Plaintiff said that each time he went to court, his son went into the courtroom for those appearances instead of him.  (*Id.* at PageID 1196.)  Based on this testimony, Plaintiff asserts that Shelby County was transporting him to court for appearances on the theft of property charge.  (ECF No. 68 at PageID 1102.)  And this, according to Plaintiff, proves that Shelby County held him on the theft of property charge.  (*Id.*)  The Court will accept for summary judgment purposes that there is a factual dispute about whether Shelby County held Plaintiff on both the State warrant and the theft charge.  That said, this factual dispute does not change the outcome here.

## B.    Intake Picture Incident

Plaintiff claims that, during his intake process at Shelby County Jail, booking personnel printed a picture of his son instead of him.  (ECF No. 68-17 at PageID 1201–02.)  Plaintiff testified at his deposition that intake staff at Shelby County Jail ran his fingerprints and that

somehow they printed his photograph. (*Id.* at PageID 1201.) Plaintiff then said intake staff first printed his son's picture when they put Plaintiff's information in the system. (*Id.*)

Next, Plaintiff stated that they printed both his son's and Plaintiff's pictures, took his fingerprints, and then booked him into the jail. (*Id.* at PageID 1201–02.) Plaintiff said, "[t]hey switched my son's picture out. Whatever file they had, they took his picture off of it and put my photo on it." (*Id.* at PageID 1202.) Plaintiff asserts that he told the intake staff that the officer never should have arrested him because the information they had was not about him. (*Id.* at PageID 1203.) According to Plaintiff, the Shelby County employees ignored his complaints. (*Id.* at PageID 1204.)

From this testimony, Plaintiff 's counsel repeatedly argues that "his son's photo came up under his RNI, during the booking process, on the computer system." (ECF No. 68-1 at PageID 1114.) But a close reading of the deposition shows there is no mention of Plaintiff's RNI in the excerpt cited. Even if Plaintiff's deposition testimony supports the inference that this incident involved his RNI number, it does not affect the outcome here.

### C. History of Wrongful Detentions

Defendant asserted in its statement of facts that "Shelby County does not have a widespread custom of wrongful detentions or mistaken-identity detentions," citing the declaration of SCSO Chief Jailer, Kirk Fields. (ECF No. 62-2 at PageID 575 (citing ECF No. 62-3 at PageID 587).) To dispute this assertion, Plaintiff points to three pieces of evidence. (ECF No. 68-1 at PageID 1115.) First, Plaintiff points to deposition testimony from IT analyst Terri Martin-Stanton for the proposition that "[t]here have been complaints about the Odyssey system." (*Id.* (citing ECF No. 68-4 at PageID 1162).) True enough, Martin-Stanton testified that she had heard complaints about the Odyssey system, stating that "they didn't like [the Odyssey

17

system] because it wasn't the old system." (ECF No. 68-4 at PageID 1162.) Defendant objects

to Plaintiff's reliance on this statement, arguing that it constitutes inadmissible hearsay. (ECF

Nos. 72 at PageID 1247.) Plaintiff argues that because Martin-Stanton had personal knowledge

of the complaints, her testimony is not hearsay. (ECF No. 79 at PageID 1278.) Martin-Stanton's

statement may be admissible to show that she heard about complaints, s*ee Bailey v. USF*

*Holland, Inc.*, 444 F. Supp. 2d 831, 849–50 (M.D. Tenn. 2006), but her testimony does not

dispute Defendant's factual assertion. Hearing about complaints related to changes in the

computer system does not support Plaintiff's claim that the problems caused instances of

mistaken identity.

Plaintiff next asserts that "[t]here is also a long litigation history concerning the wrongful

incarceration of individuals by Shelby County in its jail facilities." (ECF No. 68-1 at PageID

1115 (citing ECF No. 26 at PageID 139).) For this assertion, Plaintiff cites only to the amended

complaint, which lists three earlier lawsuits. But later in his memorandum, Plaintiff

acknowledges that "Neither the Amended Complaint (Doc. 26) nor the Claims Commission

Complaint contain anything more than allegations. As allegations, these documents are not

admissible proof of anything." (ECF No. 68-1 at PageID 1126.)

Plaintiff also concedes that none of the three lawsuits he referenced in his amended

complaint led to a finding of liability or wrongdoing by Shelby County or any other person or

entity involved in those cases. (ECF No. 68-1 at PageID 1112–13.) What is more, Plaintiff did

not attach any documents from those lawsuits as exhibits to his response. Based on the above,

Plaintiff has not adequately supported his factual assertion that there is "a long litigation history

concerning the wrongful incarceration of individuals by Shelby County in its jail facilities."

(ECF No. 68-1 at PageID 1115.)

Lastly, Plaintiff points to "numerous media reports concerning the wrongful incarceration of individuals and the fact that members of the Shelby County Commission were aware of this problem and that the problem was caused by the Odyssey computer system." (ECF No. 68-1 at PageID 1115 (citing ECF No. 68-10).) Defendant objects to Plaintiff's reliance on the media reports, arguing that they constitute "inadmissible hearsay and should not be considered." (ECF No. 72 at PageID 1247.)

Plaintiff responds by arguing that the media reports are self-authenticating and that both stories "concern the Odyssey computer system and the fact that it is causing individuals to be unlawfully detained." (ECF No. 79 at PageID 1277–78.) But even if the article is admissible, if it contains "an out-of-court statement offered to prove the truth of what is asserted in the statement," that portion of the article is hearsay. *Croce v. Sanders*, 843 F. App'x 710, 718 (6th Cir. 2021) (citing Fed. R. Evid. 801(c)). Unless an exception to the hearsay rule applies, the hearsay portion is inadmissible. And Plaintiff does not address Defendant's hearsay objection. *See Bolden*, 2021 WL 4930318, at *5. What is more, Plaintiff "submitted no other materials to show that the evidence could be presented in an admissible form at trial." *Croce*, 843 F. App'x at 718 (citing Fed. R. Civ. P. 56(c)(2)). And so the Court will not consider the media reports. (ECF No. 68-10.)

### D.     Deposition Testimony of Terri Martin-Stanton

Plaintiff relies heavily on deposition testimony from IT analyst Terri Martin-Stanton about the Odyssey and OMS computer systems used by Shelby County. (ECF No. 68-4.) Martin-Stanton testified that Shelby County maintains both systems and that she knew nothing about any State of Tennessee employees who have access to input data into either system. (*Id.* at PageID 1165.) Martin-Stanton at first testified that she did not know about any procedure for a

19

State employee to obtain access to input information into the Odyssey system.  (*Id.* at PageID 1166.)  She then clarified that there is a procedure for someone who is not a Shelby County employee to apply for access to input information into the Odyssey system, which requires court approval.  (*Id.*)  Martin-Stanton also testified that she has never personally given access to input information into the Odyssey system to anyone other than a Shelby County employee.[18]  (*Id.* at PageID 1158.)

Plaintiff also cites Martin-Stanton's testimony for the proposition that the Odyssey system allows for two RNI numbers to become associated with one individual.  (ECF No. 68-1 at PageID 1119 (citing ECF No. 68-4 at PageID 1166–67).)  Again, the testimony does not support Plaintiff's contention.  Martin-Stanton testified that she was unaware of any way to input two RNI numbers with one individual in Shelby County's prior computer system, the JSS system.  (ECF No. 68-4 at PageID 1167.)  She was also unaware of any way to resolve a single individual assigned two RNI numbers in the Odyssey system.  (*Id.* at PageID 1169.)  She said the Odyssey system has no way of alerting users when two RNI numbers become associated with one individual.  (*Id.* at PageID 1167.)  She testified that she received training on the Odyssey system, but none of the training covered the ability to have two RNI numbers associated with a single individual.  (*Id.*)

## III.     The Motion to Strike

Shelby County moves to strike portions of Plaintiff's sur-reply.  (ECF No. 80.)  Courts may strike documents filed in violation of local rules or the Federal Rules of Civil Procedure.  *See Setzer v. First Choice Lending Servs., LLC.*, No. 18-5192, 2018 WL 7500477, at *2 (6th Cir.

---

[18] Martin-Stanton did not testify, as Plaintiff claims, that "[t]he only individuals who have input access into the Odyssey system are Shelby County employees."  (ECF No. 68-1 at PageID 1119.)  But even if true, this fact does not change the outcome here.

Sept. 10, 2018); *see also Loggins v. Franklin Cnty.*, 218 F. App'x 466, 478 (6th Cir. 2007). Local Rule 56.1(e) says that "[i]f any objection to evidentiary materials is raised for the first time in the reply memorandum, the party opposing such objection(s), within 7 days of service of such reply memorandum, may file a sur-reply of not more than 4 pages that only responds to the evidentiary objection(s) raised in the reply memorandum."  LR 56.1(e).

Plaintiff moved to exceed the four-page limit, and the Court granted his motion.  (ECF Nos. 74 & 76.)  But Defendant argues that the sur-reply is improper because it goes far beyond responding to the evidentiary objections raised in Defendant's reply.  (ECF No. 80 at PageID 1356.)  And so Defendant argues that the Court should not consider the portions of the sur-reply that respond to the substantive arguments in Defendant's reply.  (*Id.*)  Plaintiff counters that he "considered the entirety of the Reply as an objection to the evidentiary material that Plaintiff presented in his response."  (ECF No. 86 at PageID 1384.)  For example, Plaintiff says that section B of Defendant's reply "clearly deals with the sufficiency of evidence in support of [Plaintiff's] claim."  (*Id.* at PageID 1381.)  But Plaintiff misunderstands the point here.  Local Rule 56.1(e) addresses the admissibility—not sufficiency—of evidence.  *See* LR 56.1(e).  And so Defendant is right, Plaintiff's sur-reply exceeds the limits set by the local rules.  Even though this would be a basis for granting the motion to strike, Plaintiff's sur-reply does not change the outcome here.[19]

## LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[19] The Court will not consider any new factual assertions in the statement of facts Plaintiff attached to his sur-reply.  (ECF No. 79-1.)

R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may satisfy this burden by showing "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.  This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As a result, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Ultimately, the "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 251–52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251). And statements in affidavits that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient evidence. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992).

## ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.      Plaintiff's § 1983 Claim**

"A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). "A municipality is a 'person' under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). But "[a] municipality cannot be held liable simply because one of its employees has committed a constitutional violation." *Andrews v. Wayne Cnty.*, 957 F.3d 714, 721 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694); *see also Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 260 (6th Cir. 2015) ("Municipalities are not vicariously liable for the actions of their employees."). "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

**A.      Constitutional Violation**

To prevail on a § 1983 claim against Shelby County, Plaintiff must first prove that he "suffered a constitutional violation." *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92). "There must be a constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails." *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389 (6th Cir. 2018) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Defendant asserts that this Court should grant summary judgment because Shelby County employees did not violate Plaintiff's constitutional rights, emphasizing that Plaintiff had limited constitutional rights as a parolee.  (ECF No. 62-1 at PageID 559–60.)  Defendant argues that (1) it did not violate Plaintiff's procedural due process rights because he waived his right to a preliminary hearing and had a revocation hearing within two months of his arrest; (2) Plaintiff had no constitutional right to a judicial hearing, probable cause, bail, or counsel; (3) Plaintiff's substantive due process claim fails because an MPD officer arrested Plaintiff and Shelby County detained him based on a facially valid State warrant; (4) jailers cannot, as a practical matter, resolve every claim of innocence by detainees held on state warrants; and (5) Plaintiff's detention after the State withdrew its warrant was not unconstitutional.  (*Id.* at PageID 560–69.)

Plaintiff responds only to some of these arguments. (ECF No. 68 at PageID 1103–08.) And, as explained below, his responses are lacking.

### i.      Due Process Rights Related to Parole Revocation Proceedings

Defendant first argues that it did not violate Plaintiff's constitutional right to due process related to his parole revocation proceedings.  (ECF No. 62-1 at PageID 560.)  As Defendant points out, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  Defendant emphasizes that under *Morrissey*, a parolee is entitled to two hearings.

Due process first requires a "preliminary hearing" following arrest "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 486.  The Supreme Court held also that a parolee is then entitled to a second hearing within a reasonable time before the parole

authority reaches a final decision on revocation—a parole revocation hearing at which "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488.[20]

Defendant contends that it did not violate Plaintiff's due process rights under *Morrissey*, because Plaintiff waived his right to a preliminary hearing and because he received a revocation hearing within the required time.  (ECF No. 62-1 at PageID 560.)  Defendant also asserts that because Plaintiff waived his right to a preliminary hearing, he cannot argue that Defendant held him without probable cause.  (*Id.*)

Plaintiff does not respond to these arguments and therefore forfeits his chance to do so. *See Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff 'fails to address [a claim] in response to a motion for summary judgment,' the claim is deemed waived." (quoting *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x 567, 568–69 (6th Cir. 2015))).  The Court therefore finds that there are no remaining material issues of fact about Plaintiff's due process rights related to the parole revocation hearings or alleged lack of probable cause for his initial detention.  And so Defendant is entitled to summary judgment and Plaintiff cannot maintain a § 1983 claim based these claims.

### ii.    Right to Bail

Defendant next argues that Plaintiff, as a parolee awaiting a parole revocation hearing, had no constitutional right to bail.  (ECF No. 62-1 at PageID 562 (citing *Clark v. Dir., TDCJ-*

---

[20] In *Morrisey* the Supreme Court held that a delay of two months for the revocation hearing was not unreasonable.  *Id.* at 488.  After Plaintiff waived his preliminary hearing, the parole board held the revocation hearing on October 10, 2019, just under two months from the date of the arrest.  (ECF No. 62-9 at PageID 885–87, 895, .)

*CID*, No. 6:06cv215, 2006 WL 3289176, at *8 (E.D. Tex. Nov. 9, 2006); *King v. Walker*, No. 06

C 204, 2006 WL 8456959, at *5 (N.D. Ill. May 8, 2006)).)  In response, Plaintiff suggests he had

a right to bail because Shelby County held him not only for the parole revocation warrant but

also for the theft charge.[21]  (ECF No. 68 at PageID 1103.)  Plaintiff then quotes a Tennessee

statute on bailable offenses[22] and concludes, "Tennessee law clearly establishes that [he] had a

right to bail on this underlying charge or at a minimum he had the right to a bond hearing."  (*Id.*)

Plaintiff may have an argument about a violation of state law.  But § 1983 is concerned

only with violations of federal rights.  *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)

("Allegations of state law or state constitutional violations will not support a § 1983 claim."

(citing *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003);

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005))); *see also Wilkins v.*

*Kawalski*, No. 1:20-CV-1057, 2021 WL 1015914, at *3 (W.D. Mich. Mar. 17, 2021) ("To the

extent that Plaintiff raises a claim based on state policy or law, he is not entitled to relief under §

1983."); *Pethel v. State of Tenn. Dep't of Child. Servs.*, No. 3:10-cv-469-TAV-HBG, 2020 WL

6827791, at *8 (E.D. Tenn. Nov. 20, 2020) ("Plaintiffs cannot assert a § 1983 claim for

violations of state policy or state law, as § 1983 only protects federally created rights."); *Green v.*

*Hutchison*, No. 3:05-cv-215, 3:05-cv-268, 2006 U.S. Dist. LEXIS 77891, at *9 n.3 (E.D. Tenn.

Oct. 25, 2006) (stating that a plaintiff can maintain a § 1983 claim for "violations of his state law

---

[21] Defendant disputes this point in its reply, emphasizing that Plaintiff's son, not Plaintiff, was indicted for the theft of property charge.  (ECF No. 72 at PageID 1245–46.)  The Court's analysis in this section assumes without deciding that Defendant held Plaintiff on both the State warrant and the theft charge.

[22] The Tennessee statute provides that "[b]efore trial, all defendants shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great.  After conviction, defendants are bailable as provided by, § 40-11-113, § 40-11-143 or both."  Tenn. Code Ann. § 40-11-102.

rights to bail, phone calls, etc." only "if they rise to the level of federal constitutional violations." (citing *Paul v. Davis*, 424 U.S. 693, 700 (1976))).

Plaintiff does not allege in his response that Shelby County violated any federal right related to bail. In fact, Plaintiff cites no legal authority for the proposition that he had any such federal rights. He cites no case law on this issue. Nor does his response identify the relevant constitutional right. Because Plaintiff has not sufficiently developed this argument, he leaves the Court little choice but to consider it waived. *See Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996))); *see also United States v. Graves*, 806 F. App'x 414, 416 (6th Cir. 2020) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997))).

The Court notes that Plaintiff's amended complaint asserts that Defendant violated his right to bail under the Eighth Amendment. (ECF No. 26 at PageID 149.) But this claim fails too. "[T]he Eighth Amendment does not mandate bail in all cases." *Fields v. Henry Cnty.*, 701 F.3d 180, 183–84 (6th Cir. 2012) (citing *United States v. Salerno*, 481 U.S. 739, 753–54 (1987)). Rather, it prohibits "[e]xcessive bail." *Id.* at 183. Put another way, "the Eighth Amendment mandates that when bail is granted, it may not be unreasonably high in light of the government's purpose for imposing bail." *Id.* at 184 (citing *Salerno*, 481 U.S. at 754). At bottom, "[t]he Eighth Amendment's protections address the amount of bail, not the timing." *Id.* at 185. And "[t]here is no constitutional right to speedy bail." *Id.* (citations omitted). The Court therefore finds that Defendant is entitled to summary judgment on the alleged violation of the right to bail.

And Plaintiff cannot maintain a § 1983 claim against Defendant for violating his Eighth

Amendment rights.[23]

### iii.      Right to Counsel and to Appear Before a Judge

Defendant also argues that Plaintiff, as a parolee, has no constitutional right to counsel or

to appear before a judge.  (ECF No. 62-1 at PageID 562–63.)  Defendant emphasizes that a

parolee awaiting a parole revocation hearing has no right to counsel.[24]  (*Id.* at PageID 563 (citing

*Maule v. Crawford*, No. 1:06-cv-236, 2009 WL 559876, at *13 (W.D. Mich. Mar. 4, 2009);

*Norton v. Everhart*, No. 01-A-01-9601-CH00030, 1996 WL 257493, at *2 (Tenn. Ct. App. May

17, 1996)).).  And Defendant points out that under *Morrissey*, parole revocation proceedings

need not occur before judicial officers.  408 U.S. at 486, 489.  In response, Plaintiff asserts only

that he had a right to counsel and a right to appear before a judge on the theft of property

charge.[25]  (ECF No. 68 at PageID 1103.)

Plaintiff relies on the Sixth Amendment, specifically the right to a speedy trial, when

asserting that Defendant violated his right to appear before a judge.  (ECF No. 68 at PageID

1104.)  But in his complaint and amended complaint Plaintiff never pleaded a violation of his

right to a speedy trial.  (ECF No. 26.)  And he cannot add new claims in response to a summary

---

[23] Plaintiff has not pleaded a due process violation based on Defendant's failure to provide him
with a bond hearing on the theft of property charge.  (ECF No. 26 at PageID 149–51.)  Even if he
had, Plaintiff has developed no meaningful argument on any such constitutional violation in
responding to Defendant's motion for summary judgment.  Plaintiff cites no supporting case law
and fails to identify the applicable legal standard.  And so he forfeits any such argument.  *See
Spirko*, 368 F.3d at 612; *Graves*, 806 F. App'x at 416; *see also Leary v. Livingston Cnty.*, 528
F.3d 438, 449 (6th Cir. 2008).

[24] Defendant is correct that the Sixth Amendment right to counsel seldom attaches to parole
revocation hearings. *See Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 n.5 (1998).

[25] Defendant disputes this point in its reply, emphasizing that Plaintiff's son, not Plaintiff, was
indicted for the theft of property charge.  (ECF No. 72 at PageID 1245–46.)  The Court's
analysis in this section assumes without deciding that Defendant held Plaintiff on both the State
warrant and the theft charge.

judgment motion.  *See Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).  And so Plaintiff cannot assert a § 1983 claim against Defendant for violating his Sixth Amendment right to a speedy trial.

As for the right to counsel, Plaintiff cites no case law to support his argument.  (*Id.* at PageID 1104.)  Plaintiff instead quotes the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  Plaintiff cites no legal authority about the scope of the right to counsel.  Nor does he provide the legal standard for determining whether a violation of that right has occurred.

The Court therefore finds that Plaintiff has not sufficiently developed this argument and again he leaves the Court no choice but to find it waived.  *See Spirko*, 368 F.3d at 612; *Graves*, 806 F. App'x at 416; *see also Leary*, 528 F.3d at 449 (finding that when a party "does not present a developed legal argument, but instead merely sets forth the legal standard" without "suggest[ing] how such a standard is applicable to him," the party waives the argument).  For Plaintiff's benefit, the Court will address this issue anyway.

"[T]he Sixth Amendment right to counsel attaches only 'at or after the initiation of judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Turner v. United States*, 885 F.3d 949, 951 (6th Cir. 2018) (quoting *United States v. Moody*, 206 F.3d 609, 614 (6th Cir. 2000)).  Put another way, "[t]he Sixth Amendment right to counsel 'does not attach until a prosecution is commenced.'"  *Id.* at 952 (quoting *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 198 (2008)).  And "[a] prosecution commences only at or after 'the initiation of adversary judicial criminal proceedings—whether

by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (quoting *Rothgery*, 554 U.S. at 198).

As stated above, the indictment for theft of property related to Plaintiff's son, not Plaintiff. And Plaintiff never appeared before a judge to answer for that charge. Plaintiff does not claim here that the authorities prosecuted him for that charge—he asserts only that Shelby County held him on that charge after an MPD Officer arrested him on the State warrant. (ECF Nos. 68 at PageID 1091–92; 68-1 at PageID 1112, 1117, 1123.) But if the State never charged or indicted Plaintiff for the theft of property and never started "adversary judicial criminal proceedings" against him on that charge, the Sixth Amendment right to counsel would not attach. Even if the right to counsel attached once Shelby County detained Plaintiff, the analysis would not end there.

"Once the Sixth Amendment right to counsel attaches, criminal defendants have a right to the assistance of counsel during 'critical stages' of the prosecution." *Turner*, 885 F.3d at 953 (citing *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). "These critical stages include 'arraignments, post-indictment interrogations, post-indictment lineups, and the entry of a guilty plea.'" *Id.* (citing *Frye*, 566 U.S. at 140). They also include post-indictment plea negotiations. *Id.*

Plaintiff offers no evidence that he endured any "critical stage" of prosecution on the theft of property charge, let alone that he did so without counsel. Plaintiff never appeared before a judge on the theft of property charge. Plaintiff claims that while his son received "a hearing, a lawyer, bail, and the right to enter a plea" on the charge, he did not. (ECF No. 68 at PageID 1104.) And so even if Shelby County held Plaintiff on both the State parole revocation warrant and the theft of property charge—and assuming the right to counsel attached when his detention

31

started—Plaintiff has not argued, let alone provided any evidence, that Shelby County deprived

him of assistance to counsel during a "critical stage" of prosecution.  The Court therefore finds

that Defendant is entitled to summary judgment as there remain no material issues of fact on this

claim and the law supports judgment in Defendant's favor.  Plaintiff cannot maintain a § 1983

claim against Defendant for violating his Sixth Amendment rights.

### iii.    Due Process Rights Related to Length of Detention

Lastly, Defendant argues that Plaintiff's substantive due process claim fails because the

MPD officer arrested him and Shelby County detained him based on a facially valid State parole

violation warrant.  The State parole authorities issued that warrant for Plaintiff.  And Shelby

County argues that after his arrest, Shelby County Jail employees were not constitutionally

required to investigate whether Plaintiff was innocent of the theft of property charge.  (ECF No.

62-1 at PageID 563–64.)  According to Plaintiff, Defendant violated his right to due process by

wrongfully detaining him for seventy-three days.  (ECF No. 68 at PageID 1107–08.)

"The general rule is that when an individual is arrested pursuant to a facially valid

warrant and detained despite protestations of mistaken identity, the individual's imprisonment is

not constitutionally repugnant."  *Jackson v. Lawson*, 760 F. App'x 394, 397 (6th Cir. 2019)

(citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).  The Supreme Court in *Baker* stated, "we

do not think a sheriff executing an arrest warrant is required by the Constitution to investigate

independently every claim of innocence, whether the claim is based on mistaken identity or a

defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of

the accused named in the warrant required by the Constitution to perform an error-free

investigation of such a claim."  443 U.S. at 145–46.  "However, 'mere detention pursuant to a

valid warrant but in the face of repeated protests of innocence will after the lapse of a certain

amount of time deprive the accused of liberty without due process of law.'"  *Jackson*, 760 F. App'x at 397 (quoting *Baker*, 443 U.S. at 145); *see also Gray v. Cuyahoga Cnty. Sheriff's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998).

"Not all wrongful detentions violate due process," because "'[t]he Constitution does not guarantee that only the guilty will be arrested.'"  *Seales v. City of Detroit*, 959 F.3d 235, 240 (6th Cir. 2020) (quoting *Baker*, 443 U.S. at 145).  "[A] plaintiff must prove that his jailers 'acted with something akin to deliberate indifference in failing to ascertain' that the person in custody is not the person wanted on the warrant."  *Seales*, 959 F.3d at 240 (quoting *Gray*, 150 F.3d at 583).  "Three factors generally inform the analysis: (1) the detention's length of time; (2) the extent to which the plaintiff protested his innocence; and (3) the availability of exculpatory evidence to the government official at the time of the detention."  *Jackson*, 760 F. App'x at 397 (citing *Gray*, 150 F.3d at 582–83).

In *Baker*, the Supreme Court found that a wrongful detention of three days based on mistaken identity did not violate due process.  443 U.S. at 145.  In *Gray*, the Sixth Circuit found a detention of forty-one days based on mistaken identity sufficient to implicate constitutional concerns.  150 F.3d at 582; *see also Jackson*, 760 F. App'x at 397 ("The fifty-eight days Jackson spent in detention . . . rises to a sufficient number of days violative of due process.").  Of course, one fact separating this case from *Gray* is that Plaintiff was the correct individual the parole officer named in the warrant.  *See Gray*, 150 F.3d at 582 ("Here, Gray was imprisoned for 41 days.  It is conceded that [Gray] is not the person named in the warrant pursuant to which he was incarcerated.").

Defendant detained Plaintiff for seventy-three days.  But Defendant emphasizes that it lacked the authority to release Plaintiff until the State withdrew the parole revocation warrant.

(ECF No. 62-1 at PageID 566.)  Plaintiff seemingly concedes this point in his response, stating

that "Shelby County may not have been able to release [him] from the State Warrant," but that

"nothing . . . precluded [Shelby County] from investigat[ing] [his] claims of mistaken identity."

(ECF No. 68 at PageID 1102.)  And so Plaintiff contends that Defendant is liable for the entire

length of his detention.  (*Id.*)  Defendant argues that, at most, Plaintiff can seek to hold Shelby

County liable for the eleven days it detained him after the State withdrew its warrant.[26]  (ECF

No. 62-1 at PageID 568.)  But at the same time, Defendant maintains that it did not violate

Plaintiff's constitutional rights during this period.  (*Id.*)

Defendant argues that its employees "were under no obligation to independently resolve

Plaintiff's claims of innocence."  (*Id.* at PageID 565.)  Defendant distinguishes between making

sure that a detainee held on a State warrant is the individual identified in that warrant and the

more onerous task of investigating whether a detainee held on a State warrant is guilty or

innocent of those charges.  (*Id.* at PageID 564–66.)  And what is more, Plaintiff cites no

authority stating that Shelby County employees were constitutionally required to investigate his

claims of innocence while he was being held under the State warrant.

Defendant relies on the Seventh Circuit opinion in *Atkins v. City of Chicago*, a case

which dealt with an individual arrested and detained on a parole-violation warrant for an

individual with the same name.  631 F.3d 823, 826 (7th Cir. 2011).  When arrested, the plaintiff

denied that he was the individual named in the warrant.  *Id.*  The plaintiff received a preliminary

hearing under *Morrissey* "but failed to persuade the hearing officer that it was a case of

misidentification."  *Id.* at 828.  The plaintiff then had a full hearing on the parole revocation,

---

[26] Plaintiff seems to assert only that Defendant is liable for detaining him for seventy-three days, without arguing in the alternative that the detention for eleven more days, if viewed on its own, constitutes a constitutional violation.  (ECF No. 68 at PageID 1107–08.)

which led to his release after thirty-six days of detention.  *Id.*  The *Atkins* court found, "[t]he plaintiff contends that guards and miscellaneous prison staff have a continuing constitutional duty, even when there are constitutionally adequate formal administrative remedies against unjustified imprisonment, to conduct an exhaustive investigation of a prisoner's claim of misidentification.  Prisons would be unmanageable if the contention were accepted."  *Id.*

Plaintiff tries to distinguish *Atkins* by pointing out that the plaintiff in that case "did not do [himself] any favors."  (ECF No. 68 at PageID 1105.)  True enough, the plaintiff in *Atkins* "muddied the waters" at his initial hearing "by arguing that he should be released because his parole had expired."  631 F.3d at 828.  But here Plaintiff waived his preliminary hearing.  And so his point about the plaintiff's conduct in *Atkins* does little to detract from that court's logic.  The other distinguishing factor Plaintiff cites is the speed with which the authorities released the plaintiff in *Atkins*.  (ECF No. 68 at PageID 1105.)  Again, Plaintiff does not speak to the fact that the Seventh Circuit explicitly rejected that prison guards and staff "have a continuing constitutional duty . . . to conduct an exhaustive investigation of a prisoner's claim of misidentification."  *Atkins*, 631 F.3d at 828.

Plaintiff claims instead that this case is like *Gray* because the Shelby County Jail's intake staff at first printed off a picture of Plaintiff's son.  (ECF No. 68-17 at PageID 1201–02.)  In *Gray*, two prison officials "were in possession of a photograph that bore virtually no resemblance to Gray, as well as a physical description detailing certain permanent scars that Gray did not have."  150 F.3d at 582–83.  The court found that "[a]bsent sufficient evidence to the contrary . . . the trier of fact could find that the failure by [the two officials] to ascertain that they were holding the wrong person violated Gray's due-process rights under the Fourteenth

Amendment." *Id.* at 583.  But as stated above, the plaintiff in *Gray* was "not the person named in the warrant pursuant to which he was incarcerated." *Id.* at 582.

Even though the State parole official erred when he assumed the indictment for theft related to Plaintiff, the warrant the State issued did relate to Plaintiff.  So the person the MPD officer arrested here and the person Shelby County detained is the same person named in the warrant.  Those facts distinguish Plaintiff's case from those he cites.  So in the end, Shelby County employees could have checked Plaintiff's identity against the warrant countless times, and each time it would only confirm that Plaintiff was the subject of the warrant.  But for those employees to deal with Plaintiff's claims of innocence, they would have to delve into an investigation of the charges underlying the warrant.

At bottom, Plaintiff identifies many factual disputes.  For example, he asserts that intake staff at the Shelby County Jail printed a picture of his son instead of him, that Shelby County employees transported him to court for appearances on his son's theft charge without taking him to appear before a judge, and that Shelby County held him on both the State warrant and the theft charge.  But not every factual dispute is a material one.

Even if Plaintiff establishes genuine factual disputes, the Court also needs to resolve related legal questions to determine if those factual disputes are material to whether a constitutional violation occurred. These legal questions include whether Shelby County employees had a constitutional duty to investigate Plaintiff's claims of innocence, whether Shelby County is liable for Plaintiff's entire detention or only for the eleven days it detained him after the State withdrew its warrant, and whether that eleven-day detention, if viewed on its own, constitutes a constitutional violation.

That said, even if the Court answers these questions in Plaintiff's favor, the analysis does not end there. As explained above—and further examined below—a constitutional violation is not enough on its own to hold a municipality liable under § 1983. *See Monell*, 436 U.S. at 694; *see also Tahfs*, 316 F.3d at 590; *Andrews*, 957 F.3d at 721; *Bible Believers*, 805 F.3d at 260; *Burgess*, 735 F.3d at 478. Plaintiff must also show that "the alleged federal violation occurred because of a municipal policy or custom." *Burgess*, 735 F.3d at 478. And as the Court explains below, Plaintiff fails to make that showing. And so, for all that, were the Court to find that Shelby County violated Plaintiff's constitutional right to due process based on the length of his detention—a finding this Court is not making here because it need not resolve that issue— Plaintiff still comes up short. In the end, Shelby County prevails here because Plaintiff fails to raise a genuine factual dispute material to whether this alleged violation "occurred because of a municipal policy or custom" as required to establish *Monell* liability for Defendant. *Id.*

This case is troubling, and the Court does not make this decision lightly. Plaintiff endured seventy-three days in detention following his arrest on a State parole revocation warrant based on a charge he did not commit. In fact, the State indicted his son for that charge, not Plaintiff. But the question here is whether Plaintiff can hold Shelby County liable under § 1983 for his detention. And in resolving Defendant's summary judgment motion—in analyzing whether Plaintiff raises a genuine dispute of fact sufficient to submit to a jury—the Court is limited by the choices Plaintiff made over what claims to plead, what evidence to provide, what facts to concede, and what legal arguments to pursue. With this in mind, the Court has little choice. In sum, the Court need not resolve whether a constitutional violation occurred here because Plaintiff does not establish *Monell* liability for Defendant.

### B.    Municipal Policy or Custom

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  Defendant argues that Plaintiff cannot establish *Monell* liability under any theory.  (ECF No. 62-1 at PageID 550.)

Plaintiff counters that he can satisfy all four.  (ECF No. 68 at PageID 1092–99.)  Plaintiff claims that many policies and procedures caused violations of his constitutional rights: (1) "the exclusive use, within the State of Tennessee, of the RNI system (a system created, maintained and controlled by Defendant Shelby County, and only used in Shelby County)"; (2) "the replacement of the Justice Portal system with a new Odyssey computer system"; and (3) "the established grievance procedures used in . . . Shelby County's jail facilities."  (ECF No. 68 at PageID 1092.)  For the reasons explained below, Plaintiff cannot establish *Monell* liability.

### i.    Illegal Official Policy or Legislative Enactment

"When proceeding under the first theory of *Monell* liability, under which a plaintiff must show an official policy or legislative enactment, the plaintiff must show that there were 'formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).  The plaintiff must "identify the

policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Id.* (internal quotation marks omitted).

Defendant argues that "Plaintiff cannot point to an illegal or unconstitutional policy of the County." (ECF No. 62-1 at PageID 551.) According to Plaintiff, "Shelby County's exclusive use, in the State of Tennessee, of creating, maintaining and using what it calls an RNI (Record & Identification Number) is a policy of the county." (ECF No. 68 at PageID 1093.) Plaintiff points to Shelby County Division of Corrections Administrative Policies and Procedures, Policy No. 400, which defines "Records and Identification Number" as "[a] permanently assigned number issued to inmates upon their first arrest in Shelby County and shall be associated with th[e] inmate in future arrests. The number is issued and maintained by the Shelby County Sheriff's Office (SCSO)." (ECF No. 68-2 at PageID 1129.) True enough, this policy defines the term. But it does not describe the specific procedures for issuing and using RNI numbers.

The record contains other policies that, although not cited by Plaintiff, more closely outline the intake procedure for detainees at Shelby County Jail. For example, Shelby County Sheriff's Office Policy No. 705, which contains "policy and procedure appl[ying] to all SCSO employees," contains procedural guidelines for admittance and processing. (ECF No. 62-3 at PageID 589.) Under this policy, "[a]ll those arrested and taken through the booking process shall be positively identified by fingerprints." (*Id.* at PageID 589.) Additionally, "[a]ll inmates must be committed with proper documentation." (*Id.*) The policy requires booking window staff to confirm that each detainee's arrest ticket is complete and that a judicial commissioner has validated the charges. (*Id.*) Under this policy, booking window staff then enter the detainee's information, as it appears on the arrest ticket, into the OMS computer system "and complete a

thumbprint scan on the AFIS system to verify the identity of the arrestee." (*Id.*)  The policy then states, "[t]he inmate is assigned an RNI number during the Identification and Fingerprinting (IDFP) process once they are verified on the Intake AFIS machine." (*Id.*)

And Shelby County Sheriff's Office Policy No, 847, which "applies to all SCSO Law Enforcement and Jail Personnel," covers intake processing.  (ECF No. 62-3 at PageID 619.)  This policy states that when a new detainee arrives at Shelby County Jail, a booking window jail processing assistant will check the arrest ticket for the detainee's identifying information, including "R&I number (if obtainable)." (*Id.* at PageID 625.)  This policy also requires booking window staff to verify the identity of each detainee through a fingerprinting process.  (*Id.*)  Under this policy, "[w]hen the print verification matches, the Records and Identification (R&I) number will appear on the thumb scan showing a hit identifying the [detainee]." (*Id.*)  And so the record shows that official Shelby County policy calls for employees at the Shelby County Jail to issue RNI numbers to first-time arrestees and to use RNI numbers to verify detainees' identities during later arrests.

Plaintiff—with help from the Court—has identified the policy and connected it to Shelby County.  But Plaintiff has not "show[n] that the particular injury was incurred because of the execution of that policy." *See Jackson*, 925 F.3d at 829.  As stated above, the lone constitutional injury Plaintiff has possibly asserted here is a due process violation based on the length of his detention.  And Plaintiff has not proved that Shelby County's policy on issuing and using RNI numbers to track and identify detainees was the "moving force" behind that injury. *See Burgess*, 735 F.3d at 479; *see also Crabbs v. Scott*, 800 F. App'x 332, 340 (6th Cir. 2020).

Rather than discuss how Shelby County policy on RNI numbers led to his injury, Plaintiff shifts focus to the Odyssey computer system.  (ECF No. 68 at PageID 1093.)  Plaintiff refers to

the Odyssey system as "[t]he database where [his] RNI (274883) was entered rather than that of

his son (497832)," and emphasizes that, unlike its predecessor, the Odyssey system permits two

RNI numbers to be linked to a single individual.  (*Id.* at PageID 1093–94.)  But Plaintiff does not

connect that alleged error in data entry to any Shelby County policy related to issuing and using

RNI numbers to track and identify detainees.  Rather, Plaintiff blames the Odyssey system

itself—not the execution of Shelby County policy on RNI numbers—for his wrongful detention.

(*Id.*)  And Plaintiff points to no official Shelby County policy related to the Odyssey computer

system or inputting RNI numbers.

   In essence, Plaintiff argues that the error in linking his RNI number with the theft of

property charge for his son on the Odyssey system led to his arrest on the State warrant.  (*Id.* at

PageID 1095.)  But he does not explain how any Shelby County policy related to RNI numbers

affected the length of his detention.  At bottom, Plaintiff has not shown a material issue of fact

that any Shelby County policy was the "moving force" behind his injury.  *See Crabbs*, 800 F.

App'x at 340–41.  And Plaintiff therefore cannot maintain a *Monell* claim against Shelby County

under this theory.

## ii.     **Municipal Policymaker Ratifying Illegal Actions**

   A plaintiff can alternatively establish *Monell* liability by proving that "an official with

final decision-making authority," a municipal policymaker, "ratified illegal actions."  *See*

*Burgess*, 735 F.3d at 478.  "[W]hen a plaintiff alleges that an unconstitutional municipal policy is

evinced by a single decision by a municipal official, 'only those municipal officials who have

'final policymaking authority' may by their actions subject the government to § 1983

liability[.]'"  *Jones v. Clark Cnty.*, 959 F.3d 748, 762 (6th Cir. 2020) (quoting *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 123 (1988)).  "Whether an individual is a final policymaker for

purposes of § 1983 liability is a question of state or local law, and a showing of policymaking authority typically requires specific evidence that the official's decisions were not subject to review or that the official could set policy related to broad goals." *Tlapanco v. Elges*, 969 F.3d 638, 658 (6th Cir. 2020) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005); *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 638 (6th Cir. 2012)); *see also Jorg v. City of Cincinnati*, 145 F. App'x 143, 147 (6th Cir. 2005) ("Whether a municipal official is a policymaker depends on the conduct in question; the same official may be a policymaker in some situations but not in others." (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986))).

In support of its motion, Defendant argues that Plaintiff cannot establish municipal liability under this theory because there is no proof that a Shelby County policymaker "had knowledge of Plaintiff's alleged detention, much less that such a person ordered Plaintiff to remain detained." (ECF No. 62-1 at PageID 556.) Plaintiff's argument on this theory is remarkably brief, consuming only a single paragraph. Plaintiff does not assert that a Shelby County policymaker ratified the decision to keep him detained. Plaintiff instead asserts that his "constitutional deprivation[s] were caused by the policy and procedure of Shelby County replacing computer systems." (ECF No. 68 at PageID 1095.) Plaintiff then states that "[c]ommon sense tells us that this computer system was not replaced without a decision maker with authority dictating that it happen." (*Id.*) In sum, Plaintiff challenges only Defendant's implementation of the Odyssey computer system.

Defendant emphasizes in reply that Plaintiff provides no evidence of an act by a Shelby County policymaker. (ECF No. 72 at PageID 1238.) What is more, Plaintiff does not even identify any Shelby County official who purportedly ratified the adoption of the Odyssey system.

Instead, Plaintiff relies solely on "common sense" to establish that some Shelby County policymaker exists. (ECF No. 68 at PageID 1095.) But at the summary judgment stage, Plaintiff needs to do more. *See Jones*, 959 F.3d at 762; *see also Tlapanco*, 969 F.3d at 658. Even if Plaintiff identified a Shelby County policymaker and provided evidence of that policymaker deciding to implement the Odyssey computer system, Plaintiff has not explained how that policymaker "ratified illegal actions" by doing so. *See Burgess*, 735 F.3d at 478. Plaintiff therefore cannot maintain a *Monell* claim under this theory.

### iii.   Inadequate Training or Supervision

The third method of establishing *Monell* liability is when a plaintiff proves "the existence of a policy of inadequate training or supervision." *Burgess*, 735 F.3d at 478. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But this is the "most tenuous" category of *Monell* claim. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23, (1985)).

A failure to train is actionable under § 1983 only if it amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388(1989)); *see also Morgan*, 903 F.3d at 565 (6th Cir. 2018) ("When the injury is a result of an action of an employee who has not been trained properly, [courts] apply 'rigorous requirements of culpability and causation'—holding a municipality liable if it has been deliberately indifferent to constitutional rights." (quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017))).

In response to Defendant's summary judgment motion, Plaintiff asserts for the first time that Shelby County provided inadequate training because "there was no training on the Odyssey system regarding the issue of two RNIs being assigned to one individual."  (ECF No. 68 at PageID 1097.)  Predictably, Defendant counters in reply that Plaintiff never plead a failure-to-train claim in his amended complaint.  (ECF No. 72 at PageID 1240.)  Defendant's point is well-taken.

As the Sixth Circuit has recognized, "there is a significant difference between a *Monell* claim alleging that a municipal policy or custom caused a constitutional violation . . . and a *Monell* claim alleging that the municipality's failure to train amounted to deliberate indifference."  *Brennan v. Dawson*, 752 F. App'x 276, 288 (6th Cir. 2018); *see also Andrews*, 957 F.3d at 721 ("'There are important differences between these types of claims,' *Arrington-Bey*, 858 F.3d at 994, so they must be analyzed differently, *Morgan*, 903 F.3d at 566.").

Because inadequate training is a distinct basis for municipal liability, a plaintiff cannot raise a failure-to-train claim for the first time in response to a summary judgment motion.  *See Doe v. Shelby Cnty. Gov't*, No. 2:18-cv-02637-JPM/tmp, 2020 WL 5995507, at *9 (W.D. Tenn. Oct. 9, 2020); *Doe v. Livonia Pub. Sch.*, No. 13-cv-11687, 2018 WL 4953086, at *8 n.2 (E.D. Mich. Oct. 12, 2018); *Mongo v. City of Detroit*, No. 16-12885, 2018 WL 1168936, at *6 (E.D. Mich. Mar. 6, 2018); *Stahl v. Coshocton Cnty.*, No. 2:15-cv-572, 2017 WL 6508384, at *15 n.14 (S.D. Ohio Sept. 22, 2017); *see also Bridgeport Music, Inc.*, 508 F.3d at 400 ("To the extent [a plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment . . . .").

Plaintiff states in his sur-reply that "Defendant is . . . incorrect when it says that the Plaintiff did not plead a lack of training claim," because "[a] careful reading of the Amended

Complaint shows that there are reference[s] to hiring, training and control of deputies." (ECF No. 79 at PageID 1275 (internal citations omitted).) The Court finds this argument to be a stretch. True enough, Plaintiff alleges in the amended complaint that "Defendant Bonner is responsible for the hiring, training, and control of all deputies of the Shelby County . . . Sheriff's Department." (ECF No. 26 at PageID 144.) But the amended complaint says nothing about inadequate training or a failure to train. And more importantly, it does not allege a failure to train related to the Odyssey system.

Plaintiff did not plead a failure to train in his amended complaint and now seeks to raise such a claim for the first time in response to Defendant's summary judgment motion. And because this claim was not plead, the Court "therefore decline[s] to consider it as a separate basis for liability." *McGuire v. City of Sweetwater*, No. 20-6067, 2021 WL 3620449, at *6 (6th Cir. Aug. 16, 2021) (citing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787–89 (6th Cir. 2005); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories . . . .")); *see also Bridgeport Music, Inc.*, 508 F.3d at 400. The Court therefore finds that Plaintiff cannot assert a *Monell* claim under this theory.

### vi.    Custom of Tolerance or Acquiescence of Federal Rights Violations

Lastly, a plaintiff can establish *Monell* liability by proving "the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478. When a plaintiff relies on "a custom of inaction towards constitutional violations," he must show "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to

the violations." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)); *see also Roberts v. Coffee Cnty.*, 826 F. App'x 549, 557 (6th Cir. 2020) (same).

Defendant asserts that Plaintiff cannot make any of these showings. (ECF No. 62-1 at PageID 552–55.) And Plaintiff's response is severely lacking on this point. The entirety of Plaintiff's argument under the corresponding heading is "[a]s detailed above, Shelby County's apparent custom of choosing to not believe an inmate and take no action is what is advocated." (ECF No. 68 at PageID 1100.) This sentence is not only confusing but also vaguely references previous arguments, leaving the Court to put flesh on the bones of Plaintiff's argument. The Court will presume that Plaintiff is asserting that Shelby County has a "custom of choosing to not believe an inmate and take no action" on complaints of wrongful detentions because of mistaken identity. (*Id.*)

Plaintiff asserts in a prior section of his response that he orally complained of his wrongful detention to Shelby County employees and that they did not take his complaints seriously or make a meaningful effort to resolve his complaints. (*Id.* at PageID 1098.) Plaintiff says Shelby County employees believe that all inmates who complain about mistaken identity are lying. (*Id.*) But, as stated above, Plaintiff must present evidence that "suffices to establish a 'clear and persistent pattern of violating federal rights' that the County had notice of and tacitly approved." *Roberts*, 826 F. App'x at 558 (quoting *Powers*, 501 F.3d at 607). And consequently, Plaintiff's "own experience is insufficient on its own to establish liability against the County." *Id.* (citing *Nouri*, 615 F. App'x at 296; *Thomas*, 398 F.3d at 433).

Plaintiff presents no evidence of other times when Shelby County wrongfully detained people because of mistaken identity and those people then claimed to be innocent but Shelby

County employees ignored their claims.[27]  Plaintiff points only to declarations from Kirk Fields and Marcquinne Yancey to support his argument.  (ECF No. 68 at PageID 1100 (citing ECF Nos. 62-3 & 62-5).)  Elsewhere in his response, Plaintiff cites their declarations for the proposition that Shelby County employees "take[] the position that all inmates are lying about being unlawfully incarcerated."  (*Id.* at PageID 1098.)

But neither declaration states that Shelby County employees assume every detainee who claims to be innocent is lying.  Instead, both declarants state that detainees often claim to be innocent of the charges against them.  (ECF Nos. 62-3 at PageID 586; 62-5 at PageID 789.)  The declarants then point out that jail staff members could not verify those claims of innocence.  (*Id.*)  And Plaintiff provides no evidence of any other times when Defendant wrongfully detained an individual because Shelby County employees ignored legitimate complaints of mistaken identity.  *See Roberts*, 826 F. App'x at 558.

Elsewhere in his brief, Plaintiff references previous lawsuits against Shelby County "concerning the wrongful incarceration of individuals by Shelby County in its jail facilities."  (ECF No. 68 at PageID 1095 (citing ECF No. 26 at PageID 139).)  But Plaintiff cites only to his amended complaint without citing or discussing any of the actual cases in his response.[28]  The descriptions of these cases in the amended complaint state only that each case involves "the

---

[27] Plaintiff cites media reports (ECF No. 68-10), which he asserts "concern the Odyssey computer system and the fact that it is causing individuals to be unlawfully detained."  (ECF No. 79 at PageID 1277–78.)  But the Court stated above that these articles constitute inadmissible hearsay and it will not consider them.  *See Croce*, 843 F. App'x at 718.

[28] Plaintiff's reliance on allegations in the amended complaint is questionable.  Plaintiff states in response to Defendant's statement of facts that "[n]either the Amended Complaint (Doc. 26) nor the Claims Commission Complaint contain anything more than allegations.  As allegations, these documents are not admissible proof of anything."  (ECF No. 68-1 at PageID 1126.)

wrongful detention of individuals in the Shelby County jail system." (ECF No. 26 at PageID 139.)

Even if true, Plaintiff's reference alone says nothing about instances of mistaken identity. And as stated above, not every wrongful detention amounts to a constitutional violation. *See Seales*, 959 F.3d at 240; *Baker*, 443 U.S. at 145. What is more, Plaintiff concedes that none of these lawsuits has led to a finding of liability or wrongdoing by Shelby County or any other person or entity involved in those cases. (ECF No. 68-1 at PageID 1112–13.) Because Plaintiff does not cite or discuss any of these cases in his response, he provides the Court with no specific information about them. And Plaintiff did not attach any documents from the lawsuits as exhibits to his response. And so Plaintiff has not shown that those cases constitute evidence of any prior constitutional violations, let alone that they involve "similar incidents" to those about which he complains. *See Shorts v. Bartholomew*, 255 F. App'x 46, 58 (6th Cir. 2007); *see also Day v. White Cnty.*, No. 2:16-cv-00002, 2017 WL 6309991, at *4 (M.D. Tenn. Dec. 11, 2017).

Plaintiff has therefore failed to meet his burden "as he has not presented evidence of a pattern of constitutional violations or incidents where inmates were harmed" because of Shelby County employees failing to investigate legitimate claims of mistaken identity or because Shelby County employees incorrectly associated a detainee's RNI number with a charge on another person. *See Young v. Campbell Cnty.*, 846 F. App'x 314, 331 (6th Cir. 2021). And so the Court finds that Plaintiff cannot establish *Monell* liability under this theory.

As explained above, after considering the four ways to prove *Monell* liability, the Court finds that Plaintiff fails to make the necessary showing for any of them. Defendant therefore is entitled to summary judgment on Plaintiff's § 1983 claims.

**II.**     **Eleventh Amendment Sovereign Immunity**

Because the Court finds that there is no genuine dispute of material fact as to *Monell*

liability and that Defendant is therefore entitled to summary judgment on Plaintiff's § 1983

claims, the Court need not address Defendant's remaining arguments, such as its argument that it

was entitled to Eleventh Amendment sovereign immunity as an arm of the state.  (ECF No. 62-1

at PageID 556.)

**<u>CONCLUSION</u>**

In the end, there is no genuine issue of material fact in this record as to Defendant's

municipal liability.  The Court finds that Defendant Shelby County is entitled to summary

judgment and therefore **GRANTS** Defendant's motion for summary judgment.

**SO ORDERED**, this 28th day of January, 2022.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE